BEDILIA WARD, APPELLEE, v. ÆTNA LIFE INSURANCE
COMPANY, APPELLANT.

FILED OCTOBER 22, 1910. No. 16,723.

Appeal: LAW OF CASE: REVERSAL. The law of the case as declared
by this court must control in the subsequent trial in the lower
court; and, if upon such trial the evidence shows without sub-
stantial conflict that the defendant is not liable under the law
so declared, a verdict and judgment against the defendant will be
reversed as contrary to the evidence.

APPEAL from the district court for Douglas county:
WILLIS G. SEARS, JUDGE. *Reversed.*

*Greene & Breckenridge,* for appellant.

*J. M. Macfarland* and *Weaver & Giller, contra.*

SEDGWICK, J.

When this case was first before this court (82 Neb.
499) it was said that "where a person, after recovery from
an accidental injury, succumbs to a disease which would
not have been fatal but for the lowered vitality following
such injury, the disease, and not the lowered vitality, is
the cause of death." When the case was here the second
time (85 Neb. 471) it was decided that "it is error to in-
struct the jury that there may be a recovery under such
policy if they find that the death resulted proximately
and as the moving cause of the accident, where 'there were
other causes that accelerated, or, even being added, re-
sulted in death.'" We are not now at liberty to criticise
or discuss the holdings of the court as above stated. Both
of these propositions have become the law of the case.
The nature of the case and of the questions to be sub-
mitted to the jury appear from the opinions above re-
ferred to. The evidence in the record now before us
shows that on the 1st day of August, 1905, Frank Ward,
the insured, had one of his feet injured while he was in

the employ of the Union Pacific Railroad Company in Omaha. He was acting as fireman upon one of the company's engines, and the conductor with whom he was working was called by plaintiff as a witness in the case. He was not asked, however, to give testimony as to the cause or manner of the injury, and there is no evidence in the record as to how the accident happened or through what instrumentality the foot was injured. The plaintiff offered no direct testimony as to the extent of the injury, and called no witnesses who gave any testimony as to the appearance of the injured foot. One of the plaintiff's witnesses, who saw the limb after the foot was bandaged, testified that it was bandaged to the ankle and was black and blue above the bandage. This is substantially all the evidence that the plaintiff offered as to the condition of the foot. Immediately after the accident the injured foot was dressed by the surgeon in the employ of the railroad company, who testified that "he had a bruised and swollen foot," and that he "dressed it or strapped it with adhesive straps and bandages." There were no traces of any fractures or broken bones, and Mr. Ward made no complaint to the physician of any other injury to his body. Mr. Ward stayed at home 15 days after the injury, and, according to the plaintiff's evidence, for 5 or 6 days remained in the house. After that he commenced walking out short distances, but was lame in his foot, and his friends testified that he "limped" when he walked. After 10 or 11 days he was examined by the company's physician, who considered that he was recovered from his injury and able to work, and so certified. On the 15th day of August he returned to work, and undertook to act as fireman upon an engine that was to run from Omaha to Grand Island. The plaintiff and other relatives testified that during these 15 days he complained occasionally of pain in his left side, extending down to his groin, but there is no evidence in the record of any visible injury to his side, nor any evidence from which it could be determined, or even conjectured, what was the cause of this pain, unless it was

that the injury to his foot was caused in some way and through some means that at the same time might have injured his side. We cannot base an opinion upon conjecture of this kind, and therefore are entirely at a loss to discover the cause of the pain complained of. On the way to Grand Island he became ill, and was taken to a hospital in Grand Island, where, after a few hours, he died. He had been performing very severe labor; the weather was very warm, and he drank freely of cold water. The physician who attended him at Grand Island testified that he died of heat exhaustion. Mr. Ward told his nurse that he drank freely of ice water and was taken suddenly with cramps and vomiting. He made no complaint of the injury to his foot or the former accident to either the nurse or the physician.

Under this condition of the evidence the plaintiff called a physician, who had never seen the deceased, and asked him a hypothetical question, reciting some of the facts above stated and some other less important facts disclosed by the evidence, in answer to which the physician stated: "I would say that the injury left the system in such a weakened condition that it was one of the causes of his death." And when asked from the facts stated in the hypothetical question what his opinion was as to the primary cause of death, he answered: "I consider the injury the relative cause of his death, leaving him in such shape that the rest was easily brought on." When asked upon cross-examination "how a crush or a bruise on a man's foot * * * could produce death in 17 days afterwards," he answered: "Just simply from the man being lowered in his vitality, left in a weakened condition, not fully recovering when he took up his former work, which was hard work." This evidence of this witness is supposed to show that the accident complained of was the sole cause of the death of the insured, independent of all other causes. The most favorable view that can be taken of this expert testimony is that the disease which caused his death "would not have been fatal but for the lowered vi-

tality following such injury," and when the case was first before this court, as appears from the quotation from that decision in the first part of this opinion, it was decided that "the disease, and not the lowered vitality, is the cause of death." This holding became the law of this case, and, as we have seen, we are not now at liberty to reexamine or criticise it.

The whole evidence manifestly comes very far short of establishing that the accident was the sole cause of death, independent of all other causes. It is clear that the evidence will not support a verdict in favor of the plaintiff, and the judgment is therefore reversed and the cause remanded.

REVERSED.

REESE, C. J., dissents.