BEDILIA WARD, APPELLEE, v. ÆTNA LIFE INSURANCE COM-
PANY OF HARTFORD, APPELLANT.

FILED MARCH 12, 1912. No. 17,234.

1. **Appeal: Evidence.** The conjectural opinion of an expert, based
solely on a hypothetical question not submitting all of the
material facts, is insufficient to sustain a verdict.

2. **Trial: Directing Verdict.** Where the evidence is insufficient to
sustain a verdict in favor of plaintiff, it is error for the trial court
to overrule a motion for a peremptory instruction in favor of
defendant.

APPEAL from the district court for Douglas county:
ABRAHAM L. SUTTON, JUDGE. *Reversed with directions.*

*Greene & Breckenridge,* for appellant.

*John M. Macfarland* and *Weaver & Giller, contra.*

ROSE, J.

This is an action to recover $1,500 on a policy of acci-
dent insurance issued by defendant December 1, 1904, to
Frank Ward, a locomotive fireman in the employ of the
Union Pacific Railroad Company. Plaintiff is the mother
of assured and was named in the policy as beneficiary in
the event of his death by accident. He was injured August
1, 1905, and died August 17, 1905. According to the peti-
tion, injuries to his left foot and left side and internal in-
juries received August 1, 1905, when he was engaged in
the duties of the employment described, resulted in his
death. In the answer defendant denied that assured came
to his death as the result of any accidental injury. From a
judgment on the verdict of a jury for the full amount of
plaintiff's claim, defendant has appealed.

This is the fourth appeal by defendant in this case.
The former opinions are reported in *Ward v. Ætna Life
Ins. Co.,* 82 Neb. 499, 85 Neb. 471, 87 Neb. 724. While
acting as fireman, assured's left foot was injured August

1, 1905, and it was promptly dressed by his employer's surgeon. About ten days later the latter certified that assured was able to return to his work, and he did so August 15, 1905, attempting to fire an engine running from Omaha to Grand Island. He did the firing until he arrived at Central City. During the remainder of the run he was sick and unable to work, and was taken to a hospital at Grand Island, where he died a few hours later. The weather was warm, and he told the nurse he drank ice water and that he was taken suddenly with cramps and vomiting, but made no reference to his previous injuries. The physician who attended him at the hospital testified he died of heat exhaustion. The substance of the evidence relating to assured's injuries and to his subsequent sickness is stated more fully in the opinion delivered on the third appeal. 87 Neb. 724. At the fourth trial the evidence varied from that adduced at the third in this respect: The testimony of Dr. Walker, who gave his opinion as an expert, was eliminated, and Dr. Connell testified for the first time in that capacity. It is the law of the case that plaintiff is not entitled to a recovery on the insurance contract without proving that "the accident was the sole cause of the death of the insured independent of all other causes." It was also held that the evidence at the third trial was insufficient to support a verdict in favor of plaintiff. 87 Neb. 724.

The controlling question now is: Does the additional testimony of Dr. Connell, in place of that of Dr. Walker, contain evidence to support the verdict that the accident was the sole cause of assured's death independent of all other causes? The proof relating to the nature and extent of assured's injuries is very meager, but the record shows, as already stated, that the surgeon who dressed the injured foot certified that assured was able to return to his work in about ten days after the injury. The weather was warm, and the physician who attended him in his last illness gave "heat exhaustion" as the cause of his death. When in the hospital assured told his nurse

that he drank ice water and that he was taken with cramps and vomiting, but said nothing about the injuries to his foot and side. In this condition of the evidence Dr. Connell was called as an expert. He had never seen assured and personally knew no fact in connection with his injuries or with his last illness, but was asked this question: "Doctor, I want to submit to you a hypothetical question, and get your opinion on the question, and I will state it in detail: Assuming, doctor, that a young man 22 years of age in good health, on the 1st day of August, 1905, received an injury on an engine by having his foot crushed and bruised between the apron and the cab of said engine, and assuming that he was thereupon compelled to quit work and remain about his home for a period of two weeks, and assuming that within three hours after receiving said injuries he complained of pain in the left side reaching down to the groin, and assuming, further, that he continued to limp in said left foot for said two weeks, and assuming that he complained of pain in his left side many times during said two weeks, and assuming further that he stated to his relatives on the 15th day of August, 1905, just before taking his run from Omaha to Grand Island as fireman, that he was not strong enough to go out, and assuming that he fired the engine for 15 hours out as far as Central City, and that just before reaching Central City he drank some water and thereupon became sick and vomited, and assuming that he remained upon the train for two hours after reaching Grand Island, and that within 48 hours after reaching Grand Island he died, what in your opinion was the primary cause of his death?" This was answered by the expert as follows: "From the facts stated here, and not knowing anything about his condition in the 48 hours that he was sick, or the last 48 hours he was alive not being given, my opinion is that the primary cause of death would be from the injury." Some of the conditions, symptoms and other evidential facts disclosed by the record were not included in the hypothetical question, and

the answer therefore was not an opinion based on all of the evidence. On cross-examination the witness said his answer might be affected by assured's symptoms during the last 48 hours of his life, if the witness knew what they were. When asked what would produce the symptoms preceding assured's death, as restated from the proofs, by counsel for defendant, the witness replied that they could be produced by an "embolism"—a term described by him as follows: "I mean a clot of blood in the artery or vein at the seat of the injury, and it becoming loosened and traveling through the circulation until it would become lodged in some portion of the circulation until it would produce the symptoms you have described." He also stated that it would be necessary to see the patient before testifying that such symptoms were caused by an embolism, but that on the hypothetical question he would say it could be the cause; that he wouldn't undertake to say the death of assured was produced by an embolism; that he was not sufficiently informed to pass judgment on that question; that he wouldn't swear to what caused assured's death, but from the hypothetical question alone his opinion was that he died from an embolism due to an injury; and that the cause of the death was a matter of speculation. In answer to the question, "And if it were true that he had cramps, nausea and vomiting as the result of drinking large quantities of cold water on a hot day, that would have something to do with the cause of his death, might it not?" he answered: "If it was due to the water; yes, sir." When all of the testimony of this expert is considered, it amounts to no more than the expression of an opinion, in answer to a hypothetical question not submitting all of the facts, that the death of assured could have resulted from his injuries of August 1, 1905, and that the drinking of cold water might have had something to do with it. In the light of the entire record, the opinion is mere speculation and conjecture, and, in connection with the facts proved, is wholly insufficient to sustain a verdict that the accident was the

sole cause of assured's death independent of all other causes. At the close of the testimony defendant requested a peremptory instruction, which should have been given. Plaintiff having repeatedly failed to establish by a preponderance of the evidence the controverted fact essential to a recovery, the cause will not be remanded for a new trial. Instead, the judgment is reversed and the cause remanded, with directions to the district court to dismiss the action.

REVERSED.