John D. Donelson, appellant, v. Fred H. Michelson, appellee.

Filed June 7, 1920. No. 21058.

1. **Fraud:** Sale of Land: Mistake of Vendor. A vendee prevented from inspecting the land conveyed to him by the mistake of the vendor in pointing out the wrong land may recover the damages sustained, although the vendor was not aware of the falsity of his representation, and there was no intent on his part to deceive, if the vendor had assumed the duty of pointing out the land, and the vendee, without knowledge of the true location, relied upon such representation.

2. ———: ———: Erroneous Instruction. It was stipulated that, before closing the deal, the vendee in a land contract might inspect the property, situated in a distant county. He previously had held title to the land, but testified that he had never seen it. There was no direct evidence that he knew its character or location. In an action for damages for deceit of the vendor in pointing out the wrong land, and thus preventing the vendee from making the inspection, it was error to instruct the jury that they might find that, "by virtue of such ownership," the vendee had previous knowledge of the character and location of the land, as the mere fact that he had once owned it would not authorize that inference, in view of the uncontradicted testimony and circumstances to the contrary.

Appeal from the district court for Hall county: James R. Hanna, Judge. *Reversed.*

*Prince & Prince,* for appellant.

*T. O. C. Harrison* and *B. J. Cunningham, contra.*

Dorsey, C.

In September, 1915, plaintiff traded city property in Grand Island, Nebraska, for a quarter section of land in Chase county, Nebraska, belonging to the defendant Michelson. The exchange was evidenced by a written contract which contained the following provisions pertinent to this case:

"The said John D. Donelson is to go to Chase county, Nebraska, and examine said land, and the said Fred H. Michelson guarantees that there are eighty (80) acres, a trifle more or less, of good, level, tillable land and under cultivation and in one body on the said one hundred and sixty (160) acres of land, and not what is called or known as 'sandy land' but what is known as a 'sandy loam.' Within the next week from this date, that is, the week commencing with September 26, 1915, said John D. Donelson will go to said land, make his examination of said land and return, and if satisfied therewith then this trade to be completed. If not as reported and as above stated, and satisfactory to John D. Donelson, then the said Fred H. Michelson is to pay the railroad fare of the said John D. Donelson expended in making the trip to and from the said land for said examination, and the said John D. Donelson will report on or before the end of the week just mentioned."

After setting forth the written exchange contract, it is averred in the petition that one Niedfeldt, acting for the defendant, took the plaintiff to Chase county, and there met one Ryan, also an agent for the defendant, and that they together "took this plaintiff out and showed him a quarter section of land, 80 acres of which was under cultivation and in corn and of the kind of land as described in said contract, representing to the plaintiff that it was the identical piece of land which they proposed to sell him and as described in the agreement; that plaintiff relied upon all said statements, representations and acts of the defendant and his agents, and not knowing the falsity thereof, and so relying thereon, did purchase said land; that said statements, representations and acts of the defendant and his said agents, and each of them, were false and untrue and were known by them and each of them to be false and untrue at the time they were made, and were made for the purpose of deceiving the plaintiff and to induce him to purchase said land and to cheat and defraud him." It is further al-

leged that the land shown was not the tract for which the plaintiff was trading; that the latter was rough and unfit for cultivation, and was of the value of only $1,200, whereas, if it had been as represented, it would have been worth $3,500; and the plaintiff prayed judgment for the difference.

The defendant's answer set up the defense, in substance, that the contract required the plaintiff to make an examination of the land; that he went to Chase county for that purpose, made his examination without interference or persuasion on the part of the defendant or his agents, and on his return reported that he was satisfied, and concluded the trade.

There was a jury trial and a verdict for the defendant, and from the judgment dismissing his action the plaintiff appeals.

Counsel for the plaintiff advance the contention that, primarily, this is not an action for fraud or deceit, but for damages for breach of specific warranty as to the quality of the land. In our opinion, however, the pleadings clearly negative that contention. The defendant, it is true, represented the land to be of a certain character and quality, but, in another clause of the same contract, the plaintiff explicitly declared his intention not to rely upon the defendant's representation, and it was agreed that the contract should be binding only in the event that plaintiff should report after a personal investigation that he was satisfied. After having returned from an ostensible examination of the land and reported himself satisfied, the plaintiff manifestly would have been estopped to rely upon breach of warranty or misrepresentation as to the character or quality of the land, unless, through the defendant's fault, he had been prevented from making a full and fair examination. It is charged in the petition that the defendant, through the acts and representations of his agents, deceived the plaintiff by inducing him to believe he was inspecting the land he was trading for, when, in fact, it was a dif-

ferent tract. The ultimate fact to be determined was not whether the land traded for was as represented, but whether the defendant's conduct had operated to prevent the plaintiff from inspecting it.

Counsel for the plaintiff insist that the verdict returned in favor of the defendant was not warranted by the evidence, but that all of the elements essential to the plaintiff's right to recover were established. In order to determine that question, a brief review of the evidence will be necessary.

By the terms of the written contract, the plaintiff was to go to the land, make his examination of it, and report whether he was satisfied. It was not stipulated in the contract that the defendant was to go or to send an agent with him. It is undisputed, however, that at the time the contract was entered into the plaintiff insisted he would not go out alone to view the land, and it was arranged between the plaintiff and the defendant that Niedfeldt should go.

After their arrival in Chase county, Niedfeldt procured one Ryan to drive out with them and help locate the land. The plaintiff was without information as to the location or boundaries of the land; he relied upon Niedfeldt to locate and point it out to him. Niedfeldt, in turn, relied upon Ryan, whom he supposed to have sufficient local knowledge to guide them. Ryan showed them a tract with about 80 acres of corn on it, which was not the land for which they were looking, but adjoined it on the west. From the fact that it had about the acreage of cultivated land on it that the contract called for, Niedfeldt assumed that it was the tract they had come to see, and, acting under that mistake, but without any intention to deceive, he made remarks which imparted to the plaintiff the belief and assurance that the land they were viewing was the tract for which he was trading. The effect of this was to prevent him from making any further investigation, and to cause him to

return home without having inspected the land he was trading for.

The evidence clearly establishes the absence of any intent on the part of Niedfeldt or Ryan to deceive the plaintiff, and the case is one of mistake rather than fraud. The conduct of Niedfeldt and Ryan amounted, in substance, to an innocent misrepresentation as to the location of the land, which was, nevertheless, as injurious to the plaintiff as if it had been intentional. If Niedfeldt was acting as the defendant's agent, charged with the duty of locating and pointing out the land to the plaintiff, under the rule adopted in this state that averment and proof of *scienter* are unnecessary, and that it need not be shown, in an action for deceit, that the false representations were made with knowledge of their falsity on the part of the person making them, we think that the defendant would be liable, regardless of the fact that the wrong land was pointed out mistakenly rather than purposely. *Omaha Electric Light & Power Co. v. Union Fuel Co.*, 88 Neb. 423; *Hilligas v. Kuns*, 86 Neb. 68. Such has been the holding in the following cases from other states; *Lawson v. Vernon*, 38 Wash. 422, 107 Am. St. Rep. 880; *Bradford v. Adams*, 73 Wash. 17; *Gunther v. Ullrich*, 82 Wis. 222, 33 Am. St. Rep. 32.

There was no controversy in the evidence in this case except upon the question whether Niedfeldt was acting as the defendant's agent in showing the land. That issue was submitted to the jury under proper instructions, and the court correctly stated the law with reference to the liability of the defendant for the consequences of Niedfeldt's conduct in pointing out the wrong land by mistake, in case the jury should find that he was the defendant's agent.

The plaintiff complains, however, that the trial court was in error in submitting to the jury the question whether the plaintiff, at the time he went with Niedfeldt to view the land, had prior knowledge of its quali-

ty, character, and boundaries. The only evidence from which such knowledge might have been inferred was that the plaintiff had, some time before the transaction involved in this case, held title to the land in Chase county. In answer to the question how he had acquired it, he testified that he had traded a pool hall for it, and, when asked if he had ever seen it, he replied: "No, sir; only the way it was described to me."

The court instructed the jury that, "if by virtue of such ownership he knew the quality, character and boundaries thereof, together with its value, then any false representation made by the defendant to him as to the above would not be grounds for an action and he could not under such circumstances claim that he was deceived thereby." All the circumstances surrounding the negotiations for the trade negative the theory that the plaintiff had prior knowledge of the location or boundaries of the land. He testified that he had never seen it, and, as a condition of the bargain, the defendant assented to his requirement that he should have the right to inspect the land before concluding the trade. The only question is whether the plaintiff was charged with the duty of finding it for himself, or whether Niedfeldt, as the defendant's agent, was under the obligation to locate and point it out to him. That being the situation, it was not, it seems to us, competent for the jury to infer from the mere fact that he had once held title to the land that he knew its location and boundaries. Yet the instruction complained of permitted the jury to find that he had such knowledge "by virtue of such ownership," in the face of positive testimony and circumstances clearly pointing to the contrary. In this, we think, the court erred, and the error must have been prejudicial to the plaintiff.

We therefore recommend that the judgment be reversed and the cause remanded for further proceedings.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, and this opinion is adopted by and made the opinion of the court.

REVERSED.