EDWIN JACOBSON, APPELLEE, V. SKINNER PACKING COMPANY, APPELLANT.

FILED JULY 2, 1929. No. 26617.

*Ritchie, Chase, Canaday & Swenson,* for appellant.

*North & O'Reilly* and *F. H. Pollock, contra.*

Heard before ROSE, DEAN, GOOD, EBERLY and DAY, JJ., and RAPER and REDICK, District Judges.

RAPER, District Judge.

The plaintiff, Edwin Jacobson, filed his petition in this case on November 20, 1923, which was stricken because of objectionable statements, and later, on September 22, 1927, filed an amended and substituted petition, in which he made the Skinner Packing Company, the Skinner Company, Lloyd M. Skinner, and Robert Gilmore, defendants. All these defendants were later dismissed from the case except the Skinner Packing Company.

The petition alleges that he purchased 100 shares of the preferred stock of the Skinner Packing Company for the sum of $100 a share, a total of $10,000, and gave two notes to the company for the purchase price, and that, as an inducement to plaintiff to purchase said stock, Paul F. Skinner, Lloyd M. Skinner, D. C. Robertson, and Robert Gilmore, who were officers of that company, and one James Smith, the agent of the company, represented to plaintiff that the Skinner Packing Company was at the time of such sale of said stock (1) making profits of about 30 per cent. per annum on its capital stock, (2) that such preferred stock was worth and of the actual value of more than $100 a share, (3) that Paul and Lloyd

Skinner had invested $400,000 in cash of their own money in the company, and (4) that dividends had been paid to the stockholders from the profits earned by said packing company; that plaintiff believed and relied upon such statements; that each of said statements was false, and that said stock was at that time worthless; that about the summer of 1921 plaintiff first learned that said representations were fraudulent; that plaintiff paid the notes he gave for the stock; and prays for damages in the sum of $10,000, with interest at 7 per cent. from November 20, 1918.

The defendant Skinner Packing Company admits the sale of the stock, and denies every other allegation in the petition.

A ten-jury verdict was returned finding for plaintiff, $8,000 damages and interest thereon, a total of $13,072.22.

At the time the suit was instituted an attachment was allowed and levied on some real estate of the company, which defendant company moved to dissolve, but the court refused to set the attachment aside.

Defendant Skinner Packing Company appeals, alleging many errors, which, in so far as may be necessary, will be taken up.

Error is claimed on admission of testimony by the witness Rosenblum that the stock in question at the time it was purchased was worthless, because said witness was not qualified to give such opinion. His examination was long and cannot be set out. He testified he had made inquiries as to such value in the fall of 1918 from brokers and others, and went to banks to inquire as to loan value of the stock; that he had visited the produce department of the defendant then in operation and saw some of its stock and asked employees how business was. The parties from whom he made inquiries, particularly the bankers and brokers, lived and perhaps still live in Omaha. None of those were called. He said he knew of grading being done for proposed buildings, but he did not know how much stock was outstanding, nor what the assets of the com-

pany were worth. There was much testimony along similar lines, but on the whole we are constrained to hold that he was not shown to have proper information upon which to base an estimate of value.

As to the witness Ralph Smith, who testified to value, his answers were based on a hypothetical question concerning a hypothetical company. Mr. Smith is manager of the sales department for stocks and bonds of the Peters Trust Company and was called by plaintiff as an expert on the values of stocks. Just why it was necessary to assume a hypothetical company is not apparent. This question was long, involved, and contained several assumed facts that had no bearing upon the actual value of the stock, about statements made by the salesman to a farmer of little business experience, and included all the misrepresentations which plaintiff claims as the basis of his action, and witness was asked if he would be able from the statement of facts to give an opinion as to the value of the stock so sold to the farmer on November 20, 1918. And witness was permitted to answer that its value was from $15 to $35 a share. The question does not state whether the representations so made to the farmer were true or false. The only apparent reason for injecting the alleged statements made by the salesman to the farmer was for the purpose of prejudicing the jury and they no doubt had that effect. They could in no wise assist the witness in estimating the value of the stock. The same kind of question in a still more objectionable form had been before that asked the witness and withdrawn, thus emphasizing the objectionable matter. The question assumes, without proof to support, that a dividend had been declared by the company two months before the charter was granted, that the company had paid out for promotion up to November, 1918, approximately one-half million dollars, that there was credited on the books a set-up of over $200,000 in increased value of its real estate, without proof that there was no actual increase in such value, and the question was very indefinite

as to the value of the notes held by the company and other doubtful assumptions. As to the "set-up" in valuing assets of the $200,000 appreciation of real estate, if there was an actual increase in value of the real estate, such fact would be reflected in the value of the stock. *Rewick v. Dierks Lumber Co.*, 109 Neb. 300. It was error to assume without proof that there was no appreciation in the real estate. There were many questions also asked the witness as to what effect it would have on values if stock had been misrepresented to plaintiff and other subscribers, and like questions, some of which were ruled out by the court. Such questions naturally would have the effect of improperly influencing the jury. The hypothetical question does not state the value of the real estate of the defendant, nor does it with reasonable certainty state the value of the work done in the process of building the packing plant. Without more definite proof of the value of the assets, no one could give a fair estimate of the value of the stock. The ruling of the court permitting the witness to answer such hypothetical question about a hypothetical company was prejudicial error. Three witnesses gave testimony as to the value of the stock, O'Donnell, Rosenblum, and Ralph Smith. O'Donnell testified the stock was worthless, but that was stricken out. The witness Rosenblum, as above stated, was not competent to fix value, and the testimony of Smith was erroneously admitted. In O'Donnell's testimony he stated that he heard one of the defendant's stock salesmen, in talking with another man whom he assumed to be also a salesman, refer to purchasers of the stock as suckers. This was incompetent, but was not stricken out. Counsel for plaintiff in several instances persisted in reforming improper questions that had been ruled out, but stating substantially the same matter. Such practice should not be permitted.

The measure of damages in a suit based upon fraudulent representations is the difference between the value of the stock if it had been as represented, or what was paid, for it, and its actual value at the time it was purchased.

The burden of proof was upon plaintiff to show such actual value. The company was newly formed, had sold and was still selling a large amount of stock, had begun to build a large and costly packing plant, had a produce business already going. Under these conditions it no doubt is difficult to prove the real value of the stock, but the fact that it is difficult to get proof does not dispense with the necessity of producing competent proof of its real value at the time plaintiff purchased it.

Defendant claims that there was no proof that the company had authorized its salesman to make the alleged misrepresentations and had no knowledge that they had been made, and therefore the defendant company is not liable in an action for deceit or fraud of the agent. The company had employed the salesman to solicit and receive subscriptions for stock. The natural inquiry of a proposed purchaser would be directed to the condition and situation of the company, its officers and promoters, the kind of business proposed to engage in, the profits, and like questions. To give such facts was necessarily incumbent on the salesman and was strictly in the line of his duties, and the company is responsible for any misrepresentations in an action for fraud and deceit. *Dresher v. Becker,* 88 Neb. 619; *Osborn Co. v. Jordan,* 52 Neb. 465; *Donelson v. Michelson,* 104 Neb. 666.

Defendant alleges error in giving instruction No. 3, to the effect that plaintiff had the right to bring his action within four years after discovery of fraud. The instruction was properly given. Defendant complains of refusal of the court to give proffered instructions concerning plaintiff's testimony. An instruction was given which is in language usually stated about the interest of a witness, which was sufficient.

Misconduct of plaintiff's attorney is alleged as a ground of error. Counsel in his zeal in several instances overstepped the rules that should govern advocates in offering and repeating offers of incompetent and irrelevant questions, frequently made statements of fact to opposing coun-

sel and to the court in the presence of the jury and made comments on the testimony during the examination of witnesses. Counsel for defendant was not wholly without fault, but to a lesser degree. In another trial perhaps there will be no cause to complain.

A letter written by a receiver who had been appointed in December, 1923, to the stockholders, pleading for funds in the way of contribution to assist the company was admitted. The letter indicated that the company was insolvent and about to lose its property by foreclosure. The receiver is not a party to this action and the letter was hearsay and should not have been admitted. Some latitude must be given in the evidence in a case like this as to the financial condition of the company before the date of purchase of the stock and after that time, but it should not be extended too far, and only to such competent evidence as to its later condition as will furnish information bearing on the value of the stock in November, 1918, when the stock was purchased. In some instances, testimony was received concerning matters too long a time after the sale. These can be guarded against in another trial.

Another alleged error is the refusal of the court to dissolve the attachment. The record does not disclose any valid reason why it should be dissolved, but the defendant can, if desired, renew its motion in the district court to dissolve the attachment.

The record is very long, and many errors are alleged, but the ones above referred to are all that seem now necessary to mention.

The judgment is reversed and the cause remanded to the district court for a new trial.

REVERSED.

Note—See Corporations, 14 C. J. 614 n. 61; 33 L. R. A. 721; 7 R. C. L. 238; Perm. Supp. 1946—Evidence, 22 C. J. 708 n. 35, 712 n. 82, 713 n. 96.