FLORENCE WESSEL, APPELLANT, v. CITY OF LINCOLN,
APPELLEE

16 N. W. 2d 476

FILED NOVEMBER 24, 1944.   No. 31834.

*Merril R. Reller* and *John McArthur*, for appellant.

*Max Kier* and *A. A. Whitworth*, contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER and WENKE, JJ.

WENKE, J.

This action was commenced in the district court for Lancaster county by Florence Wessel, widow of Edward Wessel, deceased, as plaintiff, against the city of Lincoln, as defendant, to recover a fireman's pension alleged due plaintiff as such widow under the provisions of the statutes applicable thereto. From an order sustaining defendant's motion for a directed verdict and the overruling of plaintiff's motion for a new trial, the plaintiff has appealed.

For the purpose of this opinion the plaintiff will be referred to as the widow, the defendant as the city and Edward Wessel, deceased, as Wessel.

The widow claims she is entitled to a fireman's pension under our statutes for the following reasons: First, because Wessel was a member of the city fire department for more than 21 years. Second, because Wessel suffered an accident and contracted a disease while on duty and performing services as a fireman which resulted in his death.

Sections 2439 to 2442, inclusive, Comp. St. 1922, are applicable. See *Axberg v. City of Lincoln,* 141 Neb. 55, 2 N. W. 2d 613.

The appeal being taken from an order sustaining a motion for a directed verdict we will construe the evidence in accordance with the rule announced in *McNaught v. New York Life Ins. Co.,* 143 Neb. 220, 12 N. W. 2d 108: "This court, in reviewing such decision, will assume the existence of every material fact which the evidence on behalf of the plaintiff tends to establish, including the answers to the hypothetical questions by the doctors, and, in addition, give the plaintiff the benefit of the logical inferences therefrom. See *Zielinski v. Dolan,* 127 Neb. 153, 254 N. W. 695; *In re Estate of Skade,* 135 Neb. 712, 283 N. W. 851." Bearing in mind that circumstantial evidence is competent to prove a fact, see *Fonda v. Northwestern Public Service Co.,* 134 Neb. 430, 278 N. W. 836; *Markussen v. Mengedoht,* 132 Neb. 472, 272 N. W. 241.

Section 2439, Comp. St. 1922, provides in part as follows: "All metropolitan cities, and cities of the first class having a paid fire department, shall pension all firemen of the paid fire department, whenever such firemen shall have first *served* in such fire department for the period of twenty-one years, and shall elect to retire from *active service* and go upon the retired list." (Italics ours.)

The undisputed evidence shows that Wessel became a member of the city fire department on May 6, 1918, and actively performed his duties as such until May 26, 1938. He again reported for active duty on December 9, 1938, and performed his duties on December 9 and 11. On December 13, 1938, he had a stroke and never reported for active duty thereafter. He died on October 9, 1939. Unless the period from May 26, 1938, to December 9, 1938, and after December 13, 1938, until he died, can be added to the period he actively performed his duties, it is clear that Wessel did not perform 21 years of service.

It is the widow's contention that Wessel remained a member of the city fire department until his death and was given a fireman's funeral; that in January of 1937 the city required all of its firemen to be examined and Wessel was discovered to have a disease which required treatment; that the city requested and required him to take treatments therefor if he desired to stay on duty with the fire department; and that his subsequent inability to perform his duties after May 26, 1938, to December 9, 1938, and after December 13, 1938, to the date of his death, was due to the effect of the treatments taken. Therefore, this period of time should be added to that actively served in order to meet the 21-year requirement. Assuming, for the purpose of argument, that the evidence sustains these facts, could a verdict based thereon be sustained? We find that it could not.

The complete act covering pension benefits is sections 2439 to 2442, inclusive, Comp. St. 1922. Section 2440, Comp. St. 1922, is in part: "In case * * * death is caused by or is the result of injuries received while in the line of duty,

* * * ." In *Elliott v. City of Omaha,* 109 Neb. 478, 191 N. W. 653, we held the word "injuries" to include disease. Section 2441, Comp. St. 1922, provides in part: "In case any fireman * * * , shall become permanently and totally disabled from accident or other cause, while in the line of his duty, such fireman shall forthwith be placed upon the roll of pensioned fireman, * * * ."

In construing this act we should apply these principles:

"The fundamental principle of statutory construction is to ascertain the intent of the legislature, and to discover that intent from the language of the act itself. It is not the court's duty, nor is it within its province, to read a meaning into a statute that is not warranted by the legislative language. See *State v. School District,* 99 Neb. 338, 156 N. W. 641; *State v. City of Lincoln,* 101 Neb. 57, 162 N. W. 138." *Knox County v. Perry,* 142 Neb. 678, 7 N. W. 2d 475.

"It is the duty of the court to discover, if possible, the legislative intent from the language of the act. It is not the court's duty, nor is it within its province, to read a meaning into a statute that is not warranted by the legislative language." *State ex rel. Marrow v. City of Lincoln,* 101 Neb. 57, 162 N. W. 138.

" 'Where the language of the statute is unambiguous there is no necessity for construction, and courts cannot change the clear language of a statute.' *Stiles v. Board of Trustees of Police Pension Fund, supra* (281 Ill. 636, 118 N. E. 204)." *State ex rel. Herman v. City of Grand Island, ante,* p. 150, 15 N. W. 2d 341.

" * * * where the words of a statute are plain, direct and unambiguous, no interpretation is needed to ascertain their meaning; a mere reading will suffice." *In re Estate of Robinson,* 138 Neb. 101, 292 N. W. 48.

We must accept the statutes as we find them and can permit no recovery which is not authorized by the act.

It is apparent that the purpose of the legislature was to create legislation to protect firemen while engaged in behalf of the public in this hazardous occupation. If a fire-

man becomes totally and permanently disabled from accident or other cause, while in the line of duty, he has recourse to pension benefits under section 2441, Comp. St. 1922. If he dies as the result of injuries, including disease, received while in the line of duty, he has recourse to benefits under section 2440, Comp. St. 1922. To complete the pension benefits the legislature provided in section 2439, Comp. St. 1922, that " * °* * whenever such firemen shall have first served in such fire department for the period of twenty-one years, and shall elect to retire from active service and go upon the retired list" he shall be entitled to pension benefits. We think this provision is clear and unambiguous. The word "served" as here used means the act of serving, the labor performed or the duties required of a fireman. It means the active service from which the statute says he may elect to retire. The fireman must have been performing such duties for a period of 21 years before he is entitled to the pension benefits. It does not include any period of time while he is only a member of the fire department but not on active duty. If his inability to serve and subsequent death are from causes arising out of his duties then he has recourse under the other provisions of this act, but there is no provision whereby the period of any disability to serve can be·added to the length of service which permits a fireman to retire. If the legislature intended to permit such time to be added they should have expressly so stated in the act. For a similar construction see *Rumetsch v. City of Oakland,* 135 Cal. App. 267, 26 Pac. 2d 677; *State ex rel. King v. Board of Trustees of Firemen's Pension Fund,* 192 Mo. App. 583, 184 S. W. 929.

The second proposition presents the question of whether or not, under section 2440, Comp. St. 1922, the evidence is sufficient to submit to the jury the question of Wessel's death being the result of a disease contracted while in the line of duty. We have often said that verdicts cannot be based solely on possibilities, conjecture or speculation. *Peabody v. Continental Life Ins. Co.,* 128 Neb. 23, 257 N. W. 482; *Securities Investment Corporation v. Krejci,* 132 Neb. 146, 271 N. W. 287.

The widow, in her brief, says that the hypothetical question asked Dr. McCarthy contains a concise statement of all the important facts brought out by her evidence. This question is as follows: "Q. Doctor, I am going to sak (ask) you a hypothetical question and I want you to assume the truth of all the statements in this question but I do not want you to assume any other facts which are not in the question: Edward Wessel was employed by the City of Lincoln on May 6, 1918 as a fireman on the regular City Fire Department and he was given this employment after taking a physical examination prescribed by the city; he worked regularly and was not known to miss any work on account of illness until the 28th day of May, 1938; from 1935 to 1938 he was stationed at the fire house at 10th and R Streets in Lincoln, Nebraska, known as No. 1, and his duties there included cleaning the toilet and urinal; and in doing this cleaning it was necessary for Mr. Wessel to place his hands in the toilet and urninal (urinal) whenever he cleaned them; that about August 15, 1936 Edward Wessel in some way sustained a deep scratch on the inner surface of the index finger of one hand and this scratch failed to heal in the usual way; a sore developed at the point of this scratch and this sore had the outward appearance of a chancre. In the late summer or early fall of 1936 Dr. B. Charles Pease, who is a regularly licensed physician, met Mr. Wessel on the street and looked at this sore and he observed that it had the appearance of a chancre. And about the same time Mr. Wessel developed a sore throat and it was inflamed; in December of 1936 all the firemen stationed in the engine house where Mr. Wessel was employed were required to take a medical examination and at that time it was learned that Mr. Wessel and several other firemen in this house were infected with syphilis. These other men customarily had used the toilet and urinal that it had been Mr. Wessel's duty to clean. After that Mr. Wessel was required to take a course of treatments which are of the type known as Bismuth treatments but from the time these treatments started Mr. Wessel's health got worse and in

May, 1938 he was unable to report for duty because of his health, but in December of 1938 he was able to report for duty for a few days and about December 13th he suffered a paralytic stroke of his left side, and it was on the index finger of his left hand where he had sustained the scratch and the sore appeared. Mr. Wessel never recovered; he eventually was removed to the state institution at Hastings and he died there on October 9, 1939. Up to the time of the sore appearing which appeared to be a chancre, had that appearance; it was not know (known), or at least no one was known to have observed any symptoms of syphilis in connection with Mr. Wessel and except for cleaning this toilet and urinal he was not known to have any other connection with a source of syphilis. Mr. Wessel was a man of regular habits, he had carried on normal marriage relations with his wife until his health gave way as stated in this question; neither his wife nor his two children contracted syphilis at any time and these two children appear normal in all respects; further, Mr. Wessel's genital organs at all times appeared normal. I will ask you to state whether, assuming all those facts are true, you have an opinion at (as) to the source of syphilis infection in Mr. Wessel?"

We have said that " * * * if a hypothetical question, calling for expert skill or knowledge, is so framed as to fairly and reasonably reflect the facts proved by any of the witnesses in the case, it will be sufficient. *Malcolm v. Evangelical Lutheran Hospital Ass'n,* 107 Neb. 101; *Landis & Schick v. Watts,* 82 Neb. 359; *Herpolsheimer v. Funke,* 1 Neb. (Unof.) 471." *Shotwell v. First Nat. Bank,* 127 Neb. 676, 256 N. W. 508. And that " 'Hypothetical questions propounded to an expert, if so framed as to fairly and reasonably reflect the facts proved by any of the witnesses in the case, will be sufficient, provided the subject is one proper for expert testimony.' *Landis & Schick v. Watts,* 82 Neb. 359." *Jacobson v. Skinner Packing Co.,* 118 Neb. 711, 226 N. W. 321.

However, the hypothetical question states " * * * that

about August 15, 1936 Edward Wessel in some way sustained a *deep scratch* on the inner surface of the index finger of one hand and this *scratch* failed to heal in the usual way; * * * ." (Italics ours.) The only testimony as to the nature of the injury to Wessel's finger is question No. 73 and the answer thereto: "Q. Now do you remember any circumstance suring (during) the summer of 1936 wherein Mr. Wessel was injured and your attention was called to it? A. Yes, he hurt his finger on his left hand in his line of work down at the engine house." It is the undisputed testimony of the doctors that in order for syphilitic infection to enter the body at the point of injury there must be a break of the mucuous membrane or skin and without such a break there can be no entry.

We have said in *Ward v. Aetna Life Ins. Co.*, 91 Neb. 52, 135 N. W. 220: "The conjectural opinion of an expert, based solely on a hypothetical question not submitting all of the material facts, is insufficient to sustain a verdict." And in *McNaught v. New York Life Ins. Co., supra*: " * * * Such an expert opinion based upon assumed facts not supported by the evidence is of no value. * * * The evidence of experts is ordinarily sufficient to sustain a verdict, providing, of course, * * * the facts upon which it is based have been established."

To say that a jury might, from the evidence as a whole, say that the injury or hurt to the finger resulted in a break in the skin through which the infection could have entered is leaving a material fact to their conjecture and speculation. If such were the fact it should have been proved.

If the facts are insufficient to submit to a jury then, of course, the answer of an expert to a hypothetical question, based on an erroneous assumption of a material fact not supported by the evidence and without which a recovery could not be sustained, would add no weight thereto.

With reference to the court's overruling of the motion for a new trial, in order to be error, it must appear that the new evidence is of so controlling a nature as to probably change the result of the former trial. If merely cumu-

lative or impeaching, it does not require a new trial. See *Williams v. Miles,* 73 Neb. 193, 102 N. W. 482, and *Miller v. Crosson,* 133 Neb. 892, 277 N. W. 796. From an examination of the showing made in connection with the motion we find the proposed evidence is only cumulative and impeaching. We do not think the court abused its discretion in overruling it. See *Miller v. Crosson, supra.*

AFFIRMED.