STATE, EX REL. JAMES T. ENGLISH, APPELLEE, V. JACOB RUBACK, APPELLANT.

281 N. W. 607

FILED OCTOBER 7, 1938. No. 30365.

*Irvin C. Levin,* for appellant.

*Richard C. Hunter, Attorney General, Bert L. Overcash, James T. English, Thomas C. Quinlan* and *Raymond E. McGrath, contra.*

*Allen, Requartte & Wood, Fred S. White* and *Peterson & De Voe, amici curiæ.*

Heard before ROSE, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ., and KROGER, District Judge.

EBERLY, J.

This is a proceeding in equity for an injunction restraining the alleged violation by defendant of section 3 of the Nebraska unfair practices act (Laws 1937, ch. 137). The defendant answered the plaintiff's petition by, first, a general denial; and, further, that such section 3 of the unfair practices act violates and transgresses "the due-process clause of the Fourteenth Amendment of the Constitution of the United States," also "the Fifth Amendment" thereto, also "section 3 of article I of the Bill of Rights of the Constitution of the state of Nebraska;" that it "tends to fix prices in businesses not clothed with a public interest;" "that it is special class legislation affecting, injuring and discriminating against large masses in favor of the few;" and that it "creates a monopoly and an unlawful combination, and is in violation of articles VIII and IX of chapter 59 of the Compiled Statutes of Nebraska for 1929."

There was a trial to the court, evidence being introduced by plaintiff alone, and at the close thereof defendant moved for a dismissal "for the reason that the state has failed to

establish a cause of action against the defendant." The district court overruled this motion, and, on further consideration of the evidence, a decree was entered enjoining the violation of "section 3, of Legislative Bill 137, of the laws of Nebraska for 1937" (unfair practices act). Laws 1937, ch. 137, sec. 3. From the action of the trial court overruling his motion for a new trial, the defendant appeals.

The essential portions of the unfair practices act presented for our consideration are as follows:

"Sec. 3. It shall be unlawful for any person, partnership, firm, corporation, joint stock company, or other association engaged in business within this state to sell, offer for sale or advertise for sale any article or product, or service or output of a service trade, at less than the cost thereof to such vendor, or give, offer to give or advertise the intent to give away any article or product, or service or output of a service trade where the effect of such sale below cost, or the giving, offering to give, or advertise the intent to give away any article or product, or service, or the output of a service trade, *may lessen, injure, destroy, prevent, hinder or suppress the competition of competitors* of such person, partnership, firm, corporation, joint stock company, or other association engaged in business within this state." (Italics supplied.)

Section 10 of this act, in effect, provides that the violator of section 3 shall "be deemed guilty of a misdemeanor for each single violation, and, upon conviction thereof, shall be punished by a fine of not less than One Hundred Dollars ($100.00) nor more than One Thousand Dollars ($1,000.00), or by imprisonment not exceeding six months or by both said fine and imprisonment, in the discretion of the court."

It will be noted that, as a part of the offense created and defined by section 1 of the unfair practices act, the words "with the intent to destroy the competition of any regular established dealer in such commodity, product or service, or to prevent the competition of any person," etc., are

made an essential element of this particular statutory offense. But no similar provision forms a part of section 3 of the unfair practices act on which the instant proceeding is based.

The factual situation involved in the instant case is the sales by defendant, in the usual course of business as owner of a retail grocery store in Douglas county, in two transactions, in the first whereof two pounds of M.J.B. coffee were sold at retail for 50 cents, the cost price of which to defendant had been, within 30 days prior to such sale, the sum of 51 cents; and in the second transaction, two pounds of Hills Brothers coffee were sold at retail for 53 cents, the replacement cost of which to defendant then was 51 cents; and that defendant had advertised the intended sale of such goods, and others, at cut prices in the Omaha World Herald prior to the making of such sales.

On the subject of the rights of ownership and enjoyment of personal property, the Constitution of the state of Nebraska contains the following pertinent provisions, viz.:

"All persons are by nature free and independent, and have certain inherent and inalienable rights; among these are life, liberty and the pursuit of happiness. To secure these rights, and the protection of property, governments are instituted among people, deriving their just powers from the consent of the governed." Const. art. I, sec. 1.

"There shall be no discrimination between citizens of the United States in respect to the acquisition, ownership, possession, enjoyment or descent of property. The right of aliens in respect to the acquisition, enjoyment and descent of property may be regulated by law." Const. art. I, sec. 25.

"No person shall be deprived of life, liberty, or property, without due process of law." Const. art. I, sec. 3.

On this general subject, our court has said, viz.: "This common-law right of property is secured by our Constitution. It declares that 'no person shall be deprived of life, liberty, or property, without due process of law.' The terms 'due process of law' and 'the law of the land'—one or the other of which is found in all Constitutions of the states—

are said to mean the same thing; and it is quite clear that they are indifferently used in Constitutions for the same purpose. They are said to refer to a preexisting rule of conduct, and designed to exclude arbitrary power from every branch of the government. *State v. Doherty,* 60 Me. 504, 509; *Norman v. Heist,* 5 W. & S. 171; *State v. Simons,* 2 Spear, 761, 767. Hence, these terms do not mean merely a legislative enactment; for, 'If they did, every restriction upon the legislative authority would be at once abrogated. For what more can the citizen suffer than to be "taken, imprisoned, disseized of his freehold, liberties and privileges; be outlawed, exiled, and destroyed; *and be deprived of his property,* his liberty, and his life," without crime? Yet all this he may suffer, if an act of assembly simply denouncing these penalties on particular persons, or a particular class of persons be in itself a law of the land within the sense of the Constitution.' *Hoke v. Henderson,* 4 Dev. 1, 15." *Atchison & Nebraska R. Co. v. Baty,* 6 Neb. 37. See, also, *Ex parte Newman,* 9 Cal. 502; *Ex parte Quarg,* 149 Cal. 79, 84 Pac. 766; *Ex parte Dickey,* 144 Cal. 234, 77 Pac. 924; *In re Smith,* 193 Cal. 337, 223 Pac. 971; *People v. Pace,* 73 Cal. App. 548, 238 Pac. 1089.

The conclusion is that the constitutional guaranties of our Bill of Rights contemplate that every person legally possesses the right of acquiring the absolute and unqualified title to every species of property recognized by law, with all rights incidental thereto, and, in connection with the right of personal liberty, it includes the right to dispose of such property in such innocent manner as he pleases, and to sell it at such price as he can obtain in fair barter. *State v. Sperry & Hutchinson Co.,* 94 Neb. 785, 144 N. W. 795; *In re De Klotz,* 98 Neb. 861, 155 N. W. 240; *Hall v. State,* 100 Neb. 84, 158 N. W. 362; *Tyson & Brother v. Banton,* 273 U. S. 418; *Wolff Packing Co. v. Court of Industrial Relations,* 262 U. S. 522; *Ribnik v. McBride,* 277 U. S. 350; *Williams v. Standard Oil Co.,* 278 U. S. 235; *New State Ice Co. v. Liebmann,* 285 U. S. 262; *Old Dearborn Distributing Co. v. Seagram-Distillers Corporation,* 299 U. S. 183.

The preliminary question now presented, in view of the essential nature of the transactions involved, is a mere sale of groceries, a transaction in no manner affected with a public interest. Does the language of section 3 of the unfair practices act possess the requisite definiteness to properly define a legal offense? It contains no definition of criminal intent, or of evil or criminal purpose, or of guilty knowledge. It is to be remembered that innocence must always be presumed. Under the terms of such section 3, criminality must be determined and punishment inflicted wholly without reference to the intent, purpose or actual knowledge of the seller, solely because, as a result of what is done, such act "may lessen, injure, destroy, prevent, hinder or suppress the competition of competitors."

In *Fairmont Creamery Co. v. Minnesota*, 274 U. S. 1, 10, it was stated: "It is not permissible to enact a law which, in effect, spreads an all-inclusive net for the feet of everybody upon the chance that, while the innocent will surely be entangled in its meshes, some wrong-doers also may be caught."

Likewise, in *Connally v. General Construction Co.*, 269 U. S. 385, we find the following language: "The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another."

The statutory language employed by the controlling statute in defining the offense makes use of the word "may," apparently for the obvious reason of enlarging its scope

and lightening the burden of proof. The word "may" includes in its definition "possibilities."

"In one of its usable senses the verb 'may' comprehends the idea of possibility, and, so used, becomes equivalent to the expression 'might possibly;' it has been defined as to be possible. It may comprehend further the idea of probability, and also the thought of what is, with more or less certainty, to be expected. Whether it carries the thought of probability, or of possibility and not probability, often depends on the context. It has been said that it comprises all the possible rather than the reasonably probable consequences, but that it is not to be taken as including every conceivable possibility, and that it must be reasonably applied, having in mind the purpose in view." 39 C. J. 1394.

"In creating an offense which was not a crime at common law, a statute must of course be sufficiently certain to show what the legislature intended to prohibit and punish, otherwise it will be void for uncertainty. Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible; but where the legislature declares an offense in words of no determinate signification, or its language is so general and indefinite that it may embrace not only acts commonly recognized as reprehensible but also others which it is unreasonable to presume were intended to be made criminal, the statute will be declared void for uncertainty." 16 C. J. 67.

"The test to determine whether a statute defining an offense is void for uncertainty (1) is whether the language may apply not only to a particular act about which there can be little or no difference of opinion, but equally to other acts about which there may be radical differences, thereby devolving on the court the exercise of arbitrary power of discriminating between the several classes of acts. *Czarra v. Board of Medical Supervisors*, 25 App. Cas. (D. C.) 443. (2) The dividing line between what is lawful and what is unlawful cannot be left to conjecture. *United States v. Capital Traction Co.*, 34 App. Cas. (D. C.) 592, 19 Ann.

Cas. 68; *United States v. Washington R. & E. Co.,* 34 App. Cas. (D. C.) 599." 16 C. J. 68, note 10.

See, also, *Ex parte Jackson,* 45 Ark. 158; *Stoutenburgh v. Frazier,* 16 App. Cas. (D. C.) 229, 48 L. R. A. 220; *State v. Gaster,* 45 La. Ann. 636, 12 So. 739; *Augustine v. State,* 41 Tex. Cr. Rep. 59, 52 S. W. 77, 96 Am. St. Rep. 765.

It is obvious that the terms of the statute under consideration are indefinite and uncertain. The elements of the crime it attempts to define and punish are not so clearly expressed that the ordinary person is apprised in advance as to what course it is lawful for him to pursue, and the intent and purpose of the sovereign is not clearly declared. Under these circumstances, and it being a rule of this court that a statute will not be declared unconstitutional unless necessary to the proper disposition of the pending case (*Howarth v. Becker,* 131 Neb. 233, 267 N. W. 444), the constitutional questions will not be discussed or determined.

It follows that the portion of the statute quoted, even when taken in connection with the context, is void and of no effect, and is insufficient to sustain a prosecution thereunder or civil proceedings based thereon. Thus, in overruling appellant's motion to dismiss the action, the trial court committed reversible error.

The judgment of the district court is, therefore, reversed and the proceedings dismissed.

REVERSED AND DISMISSED.