STATE OF NEBRASKA, APPELLEE, v. ERIC NELSON, DOING BUSINESS AS ERIC NELSON NEWS COMPANY, APPELLANT. STATE OF NEBRASKA, APPELLEE, v. SIDNEY COREN, DOING BUSINESS AS MEYERS NEWS STAND, APPELLANT.

95 N. W. 2d 678

Filed April 10, 1959.   Nos. 34513, 34514.

J. M. Emmert, Neal H. Hilmes, Irvin C. Levin, and Jerry M. Gitnick, for appellants.

Herbert M. Fitle, Charles A. Fryzek, Edward M. Stein,

*James P. Costello, Walter J. Matejka,* and *Robert H. Blanchard,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

These cases began in the municipal court of Omaha by the filing of separate complaints for the violation of an ordinance of the city of Omaha. They were tried at the same time, resulting in a finding of guilt. The defendant in each case was fined. Each defendant appealed separately to the district court, where the causes were again tried at the same time and with the same result. Each defendant brings the cause relating to him here by appeal. The causes were docketed, briefed, and argued separately here.

Each defendant presents assignments of error not common to the other. An assignment of error, common to each cause, is argued here. We deem it controlling and hence consolidate the causes for decision.

We reverse the judgment in each case and remand each cause with directions to dismiss the complaints.

For convenience herein we refer to the State of Nebraska as the city.

The city filed a complaint against each defendant, the charging parts being identical. It is that the defendant "then and there being did unlawfully offer for sale, attempt to sell, exhibit, keep in his possession with intent to sell or give away to any person, magazines and other publications *which, read as a whole are of an obscene nature* in violation of Omaha Municipal Code 14924 as amended by Ordinance 18508 Chapter 12 Art. 40.7 contrary to the City Ordinance of the City of Omaha in such cases made and provided, * * *." (Emphasis supplied.)

The ordinance provided: "It shall be unlawful for any person to sell, offer for sale, attempt to sell, exhibit, give away, keep in his possession with intent to

sell or give away, or in any way furnish or attempt to furnish to any person any comic book, magazine, or other publication which, read as a whole, is of an obscene nature." Ordinance 18508, c. 12, Art. 40.7, City Ordinance, City of Omaha.

An assignment of error common to both defendants is that the ordinance is vague and indefinite and hence unconstitutional and void.

The defendants here rely on our decision in State v. Pocras, 166 Neb. 642, 90 N. W. 2d 263. The city asks that we reconsider the Pocras case. It asks that we apply the rule of construction of ejusdem generis to the Omaha ordinance in accord with the contentions of the dissent in the Pocras case in which the writer of this opinion joined.

The applicable rule is: The constitutionality of an act of the Legislature having been passed upon by this court, and no additional grounds being presented, the same will be adhered to in all future cases in which that question is directly involved and in which it becomes a vital and integral factor in the determination of the issues made. Malin v. Housel, 105 Neb. 784, 181 N. W. 934.

We do not deem it consistent with sound adjudicative procedure to refuse to apply the ejusdem generis rule to one legislative act and then apply it to another similar act. We point out, however, that if we were to do so here it would not remove the invalidity of the ordinance here involved.

In the Pocras case the defendant was charged in that he "did unlawfully cause to be offered for sale and *dispose of* obscene, lewd and indecent publications * * *." The court held that part of the ordinance which made it unlawful to "dispose of in any manner, any obscene, lewd, or indecent book" etc., was void for uncertainty as a violation of due process as guaranteed by both state and federal Constitutions.

We there stated this rule: A crime must be defined

with sufficient definiteness and there must be ascertainable standards of guilt to inform those subject thereto as to what conduct will render them liable to punishment thereunder. It is sustained by the authorities cited and quoted in the opinion.

In the Pocras case the defendant was charged with an offense based in part on the provision of the ordinance held to be void and accordingly we affirmed a dismissal of the complaint.

The defendants here argue that the provision of the ordinance here involved "or in any way furnish or attempt to furnish" is subject to a like finding of uncertainty rendering the ordinance void. We need not determine that question.

In the instant cases the language to which the above objection is made was not included in the complaints stating the alleged offenses.

However, in the instant cases the language used in the ordinance "which, read as a whole, is of an obscene nature" was included in the complaints as an essential element of the offenses charged.

Based on the authorities cited and the rules of law stated in the Pocras case we would find no difficulty in concluding that the above language was void for uncertainty.

The city, however, relies on Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498. The holding there upon which the city relies is epitomized as follows: The standard for judging obscenity, adequate to withstand the charge of constitutional infirmity, is whether, to the average person, applying contemporary community standards, the dominant theme of the material, taken as a whole, appeals to prurient interest.

The rule of the Roth case was stated as a guide to the finders of fact in considering the evidence.

The city would have us read into the ordinance the above "standard for judging" as a definition of the language relating to books, magazines, or other publications

"which, read as a whole, is of an obscene nature."

We anticipate no difficulty in finding the "average person" as comparable to the reasonable man that is often referred to in tort litigation. We have doubts if the "average person" whether he be judge or juror, would be able to apply the phrase "appeals to prurient interest" without conjecture or resort to a dictionary. We point out that the phrase "of an obscene nature" is far more indefinite than the phrase "prurient interest." However, if we were to accept as a definition the language quoted and read into the ordinance the clause "contemporary community standards," we would be creating an area of vagueness and indefiniteness that would itself require a holding that the ordinance was vague and indefinite and hence void.

In Connally v. General Construction Co., 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322, that court affirmed an interlocutory injunction restraining the enforcement of a statute that made it a misdemeanor for an employer to pay less than the "current rate" of wages "in the locality" where the work was performed. The court held that what was meant by "current rate of wages" was incapable of any definite answer. It held also that "additional obscurity" is imparted by the use of the qualifying word "locality." The court asked and answered the question: "Who can say, with any degree of accuracy, what areas constitute the locality where a given piece of work is being done? Two men moving in any direction from the place of operations, would not be at all likely to agree upon the point where they had passed the boundary which separated the locality of that work from the next locality." The court concluded with this statement: "* * * this element of uncertainty cannot here be put aside as of no consequence, for, as the rate of wages may vary—as in the present case it is alleged it does vary—among different employers and according to the relative efficiency of the workmen, so it may vary in different sections. The result is that the

application of the law depends not upon a word of fixed meaning in itself, or one made definite by statu-tory or judicial definition, or by the context or other legitimate aid to its construction, but upon the probably varying impressions of juries as to whether given areas are or are not to be included within particular localities."

The court held that the term "locality" was "fatally vague and uncertain." So here we are compelled to the conclusion that the term "community standards" would be, if adopted as a part of a legislative act, "fatally vague and uncertain." In addition to the vague and indefinite word "community" we would have also the added indefiniteness and vagueness of what constituted "contemporary * * * standards."

During the course of the opinion the court held: "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. * * * the decisions of the court upholding statutes as sufficiently certain, rested upon the conclusion that they employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them, * * * or a well-settled common law meaning, notwithstand-ing an element of degree in the definition as to which estimates might differ, * * * 'that, for reasons found to result either from the text of the statutes involved or the subjects with which they dealt, a standard of some sort was afforded.' "

By quotation from United States v. Capital Traction Co., 34 App. D. C. 592, 19 Ann. Cas. 68, the court held:

"* * * The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another.' "

In Winters v. New York, 333 U. S. 507, 68 S. Ct. 665, 92 L. Ed. 840, the court held: "The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement. * * * There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment."

It is not amiss to point out that we followed Connally v. General Construction Co., *supra,* and Winters v. New York, *supra,* in the Pocras case. We accept as sound the rules of law quoted from the Connally and Winters cases. We adhere to our decision in State v. Pocras, *supra.*

For the reasons herein given we find that portion of the ordinance providing "which, read as a whole, is of an obscene nature," is void and of no effect, and consequently the charges made against the defendants based thereon are without force and effect.

We accordingly reverse the judgment of the trial court in each cause and remand each cause to the trial court with directions to dismiss each complaint.

REVERSED AND REMANDED WITH DIRECTIONS.