BENSON F. BACHUS ET AL., APPELLEES, V. CLARENCE L. E.
SWANSON, STATE TREASURER OF THE STATE OF NEBRASKA,
ET AL., APPELLANTS,
ROBERT O. REHKOPF ET AL., INTERVENERS-APPELLEES.
136 N. W. 2d 189

Filed July 9, 1965. No. 35993.

(1)

2

Clarence A. H. Meyer, Attorney General, Homer G. Hamilton, William F. Ryan, Donald L. Knowles, Herbert M. Fitle, Edward M. Stein, Lane, Baird, Pedersen & Haggart, and Theodore M. Tedesco, for appellants.

Leary & Leary, for appellees.

Swarr, May, Royce, Smith, Anderson & Ross, for interveners-appellees.

Heard before WHITE, C. J., CARTER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and WESTERMARK, District Judge.

McCOWN, J.

Plaintiffs brought this class action to test the constitutional validity of sections 77-318, 77-413, 77-716, and 77-1235, R. S. Supp., 1961, which were enacted as L.B. 206, Laws 1961, c. 374, p. 1148, and L.B. 697, Laws 1961, c. 375, p. 1152. L.B. 697 is amendatory of a part only of L.B. 206, and a determination of its validity is not essential to a determination of this action. The district court found L.B. 206 unconstitutional and void. The defendants have appealed.

Section 1 of L.B. 206 amends section 77-318, R. R. S. 1943, which applies only to returns of a decedent and provides that the tax be computed and to the tax shall be added "a penalty (1) on tangible property, of fifty per cent of the amount due and (2) on intangible property five times the amount due." This is the only section in which the amount of a civil penalty is spelled out.

Section 2 of L.B. 206 amends section 77-413, R. R. S.

1943, and has application to a situation where a taxpayer files a return but omits either tangible or intangible property. It provides that the tax shall be computed and: "To the tax shall be added * * * a penalty as provided in section 77-318; * * *."

Section 3 of L.B. 206 amends section 77-716, R. R. S. 1943, and applies to intangible property only. It applies where a taxpayer has failed to file a return as well as where he has omitted any intangible property from his return. It provides that the property not returned or omitted be taxed, "to which tax shall be added a penalty as provided in section 77-318."

Section 4 of L.B. 206 amends section 77-1235, R. R. S. 1943, and applies where a taxpayer files no return. It applies to tangible or intangible personal property and provides in part: "* * * the county assessor shall proceed to assess the number and description of the several enumerated articles of property and shall add to the value thereof the penalty provided by section 77-318; * * *."

The disparity in language between section 2 and section 4 of L.B. 206, with respect to where and how the penalty shall be applied, is immediately apparent. Section 2 provides that the assessor shall "compute the tax" and that "to the tax shall be added * * * a penalty as provided in section 77-318; * * *." Section 4 provides in part: "the county assessor shall proceed to assess the number and description of the several enumerated articles of property and shall add to the value thereof the penalty provided by section 77-318; * * *."

It appears obvious that the intent of the Legislature was that the precedure of section 2 be followed whether or not a return was filed. The defendants assert that the language of section 4 is ambiguous and susceptible of more than one meaning and that this court should rewrite the section by removing some words and substituting others. The position seems to be that any statute passed by the Legislature should be open to construction as a

matter of course, and that we should not only judicially construe it, but judicially rewrite it. A statute is not to be read as if open to construction as a matter of course. Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain the meaning. In the absence of anything to indicate the contrary, words must be given their ordinary meaning. It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. Neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute. Franzen v. Blakley, 155 Neb. 621, 52 N. W. 2d 833; Todd v. County of Box Butte, 169 Neb. 311, 99 N. W. 2d 245. The language used does not appear to be ambiguous and, therefore, permits of no interpretation.

Even if it were deemed open to construction, this is a penalty statute which must be strictly construed, and its import may not be extended by construction. Misle v. Miller, 176 Neb. 113, 125 N. W. 2d 512.

Since a penalty statute is to be strictly construed, the courts will not interpolate conditions omitted by the Legislature or extend the language used by implication. The courts must assume that the Legislature intended to do what it did. Johnson Fruit Co. v. Story, 171 Neb. 310, 106 N. W. 2d 182.

The actual dollar penalty resulting from an application of the procedure quoted from section 4 of L.B. 206 (addition of the penalty to value prior to computation of the tax) would amount to 2 percent, whereas the penalty under section 2 (addition of the penalty to the computed tax) would be 500 percent.

The defendants contend that to permit section 4 of L.B. 206 to be read in accordance with its actual language would result in absurdity, apparently because the other three sections of L.B. 206 are worded differently. We suggest, however, that it might well be possible that a 2 percent penalty is no more absurd than a 500 percent penalty. This possibility is particularly emphasized

where, as here, there were two additional separate criminal penalties for falsely and willfully failing to return intangibles, which, incidentally, differed in both maximum and minimum amounts of fine. §§ 77-718, R. R. S. 1943, and 77-1232, R. S. Supp., 1961.

Other problems of uniformity and constitutional requirements are apparent in L.B. 206. A review of the Nebraska statutes since 1929 in connection with personal property taxes reveals a maze of changes and amendments, as well as overlapping and differing statutory penalties and varying methods of procedure.

It is apparent that there is a lack of uniformity not only as to penalties, but with regard to notice and opportunity for hearing and rights of appeal. Conflicting, overlapping, and ambiguous provisions are apparent in the statutes dealing with tangible and intangible personal property omitted or not returned. At least six different statutes deal with the adding of omitted or unreturned tangible or intangible personal property to tax returns. At least three different officers or bodies are given authority and responsibility with respect to adding omitted or unreturned personal property to the tax rolls. There are three separate sections dealing with notices, each one substantially different as to what is required and how it is given. There are two separate criminal penalties which apply to false and willful omissions as to intangibles. Provisions for hearing and appeals on the addition of intangible property for purposes of the tax and penalty vary, and three sections of L.B. 206 had no provision for appeal from a refusal to waive the penalty, while one section did.

Section 2 of L.B. 206 specifies an examination of the taxpayer under oath, and obviously before assessment, while sections 1 and 4 have no such requirement. Section 3 requires a notice by registered or certified mail and a hearing at a definite time and place. It should be noted that there is no evidence here that any taxpayers were ever examined, under oath or otherwise, prior to

the assessments of intangible taxes and penalties here involved. It is also clear that each taxpayer involved filed a return.

The provisions of sections 1, 2, and 4 of L.B. 206 provide for no appeal from a refusal to waive the penalty. However, they were amended in 1963 to provide for appeals. Even the appeals now provided for in those sections, as amended in Laws 1963, c. 443, p. 1463, differ from the appeal provisions provided for in section 3 of L.B. 206.

The defendants contend that all of the statutes pertaining to the returns of personal property are concerned with the matter of revenue and taxation and must be considered as a whole and "in pari materia." Any attempt to apply this rule to the veritable thicket of Nebraska statutes dealing with intangible property taxes demonstrates the lack of required constitutional uniformity, equality, and due process in L.B. 206.

The defendants contend that hearing could be held before the county board of equalization with respect to any section of L.B. 206. The county board of equalization, however, has never been given authority by the Legislature to impose penalties, nor to hear any protests involving the penalties imposed or the waiver of them, and still does not have such authority. §§ 77-1502 to 77-1507, R. R. S. 1943.

The Legislature, specifically in L.B. 206, endeavored to provide for a waiver of penalties where the omission or failure to return was the result of an innocent mistake and could not in any way be deemed to be the result of an intent to avoid the filing of a lawful return or the payment of a tax lawfully due. Yet, the Legislature provided a process so deficient that in operation, in many instances, a taxpayer might not even discover that he had a right to the benefits of the waiver, or the necessity to use the right.

The evidence shows that although it did not fit the requirements of any particular notice statute, the asses-

sor, nevertheless, in all but one instance, did notify the taxpayers that they had failed to list all their stocks or had undervalued some, and that their returns had been corrected as shown, with an itemization of the intangible property added. This notice also stated: "As required under the provisions of L.B. 697, 1961 Legislature, your assessment has been corrected as follows." At this point, we should note that the provisions of L.B. 697 referred to, in themselves, applied only to property of a decedent.

The assessor in Douglas County did not add the property or the penalty on the taxpayers' own returns, but prepared and filed a separate additional schedule for each of them which was filed and kept in a separate book. In all instances disclosed by the record, the taxpayers first received a statement for their regular personal property taxes computed from their returns as filed. This statement was sent after the assessor's notice by a few weeks, and, approximately one month later, they received a separate statement for the omitted property, which was shown as tax only. Even the notice of delinquency from the sheriff sent later referred to the entire amount as tax. Nowhere in any of the communications or tax statements did the word "penalty" appear at any time or at any place. At least one notice did advise the taxpayer that the board of equalization would convene on certain days at which time it could review the action of the county assessor, but some of the notices did not. The fact that approximately 300 penalties were removed by the assessor on his own volition and, apparently, without written protests, out of some 2,800 notices sent, graphically demonstrates the extent of the problem.

Perhaps the most important practical aspect is that the taxpayer who has made an innocent mistake, but has only a small amount of property added to his return, is the one least likely to realize that he has been sub-

jected to a penalty, and has already paid it, when he was entitled to have it waived.

As stated in Coe v. Armour Fertilizer Works, 237 U. S. 413, 35 S. Ct. 625, 59 L. Ed. 1027: "Nor can extra-official or casual notice, or a hearing granted as a matter of favor or discretion, be deemed a substantial substitute for the due process of law that the Constitution requires. * * * 'It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing.' "

Here is involved the constitutional validity of an act of the Legislature imposing a penalty of 500 percent of the amount of the tax due and with a specific provision by the Legislature for the waiver of that penalty under specified circumstances. The constitutional validity of an act of the Legislature is to be tested and determined not by what has been or possibly may be done under it, but by what the law authorized to be done under and by virtue of its provisions. United Community Services v. The Omaha Nat. Bank, 162 Neb. 786, 77 N. W. 2d 576.

For the reasons herein stated, we find L.B. 206 to be unconstitutional and void as discriminatory between members of a class, and nonuniform, arbitrary, and capricious in its operation, contrary to Article I, section 25, and Article III, section 18, Constitution of Nebraska; and that it fails to conform with the constitutional requirements of due process.

The judgment of the district court was correct and is affirmed.

AFFIRMED.