STATE OF NEBRASKA, APPELLANT, v. JAMES E. ADKINS, APPELLEE.

STATE OF NEBRASKA, APPELLANT, v. DANIEL J. SUTHERLAND, APPELLEE.

241 N. W. 2d 655

Filed May 5, 1976. Nos. 40309, 40310.

Raymond E. Baker and Douglas R. Milbourn, for appellant.

R. Steven Geshell of Roback & Geshell, Mark M. Sipple of Walker, Luckey, Whitehead & Sipple, and Charles H. Rogers, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

The county attorney of Platte County has brought consolidated error proceedings pursuant to sections 29-2315.01 to 29-2316, R. R. S. 1943, to test the constitutionality of subsection (1)(g) of section 28-4,127, R. S. Supp., 1974, as contained in the Nebraska Controlled Substances Act. That portion of the statute reads as follows: "(1) It shall be unlawful for any person: * * * (g) To visit or to be in any room, dwelling house, vehicle, or place where any controlled substance is being used contrary to the provisions of sections 28-459 and 28-4,115 to 28-4,142, if the person has knowledge that such activity is occurring; * * *." The numbered sections referred to in subsection (1)(g) constitute the entire Nebraska Controlled Substances Act, and a violation of subsection (1)(g) is a misdemeanor.

Neither subsection (1)(g), above quoted, nor any equivalent thereof, appears in the Uniform Controlled Substances Act which was approved by the National Conference of Commissioners on Uniform State Laws in 1970. See 9 Uniform Laws Annotated (Master Ed.), 145, and particularly section 402, pp. 298, 299, and 301. Nor does that language, or its equivalent, appear in the present federal Drug Abuse Prevention and Control laws. Title 21 U.S.C.A., § 801, et. seq. A review of the legislative history of Laws 1971, L.B. 326, the Nebraska Controlled Substances Act, is of no assistance in determining the reason for the Nebraska Legislature including the language contained in subsection (1)(g), as there is no

discussion of that particular subsection in the record of the committee hearings or of the floor debates. Therefore, our decision as to the constitutionality of subsection (1)(g) will be determined strictly upon the merits of the statute itself, and not upon the intention of the Legislature in enacting the provision.

The factual background of these cases, as reflected by the record, is meager. Appellees, James E. Adkins and Daniel J. Sutherland, were each charged in the county court of Platte County, in separate cases, with being present where controlled substances were being used, in violation of section 28-4,127 (1) (g). The separate complaints charged that on or about February 20, 1975, in Platte County, Nebraska, each of them was unlawfully present in the same 1968 Chevrolet automobile in which controlled substances were being used, each of them knowing full well that such activity was occurring. It appears that both individuals, and certain casual acquaintances, were present in the same automobile at the same time and occasion, and under the same circumstances.

Prior to trial, counsel for each appellee moved for a dismissal of the charges, claiming that the statute was unconstitutionally vague and overbroad on its face in contravention of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and sections 1, 3, and 5 of Article I of the Nebraska Constitution. The county court sustained each motion, quashed the complaints, and dismissed the actions. The Platte County attorney appealed to the District Court for Platte County, which affirmed the ruling of the county court and held that section 28-4,127 (1)(g) was unconstitutionally vague and overbroad on its face. The cases were consolidated for purposes of appeal, and the Platte County attorney brought error proceedings to this court from the District Court's order dismissing and quashing the complaints and affirming the county court's ruling. The appellees

had not been in jeopardy. We affirm the judgment of the District Court.

The crux of appellees' argument that the statute under consideration is unconstitutionally vague and overbroad is that it encompasses within its express language what may essentially be innocent conduct.

Under the express terms of section 28-4,127 (1)(g) only three things are necessary to constitute a crime. A person need only (1) be in a place, (2) where a violation of the Controlled Substances Act is being committed, and (3) with knowledge that such activity is occurring. It is evident that the statute as written is broad enough to encompass entirely innocent behavior. Individuals may find themselves in situations such as at parties, theaters, dance halls, hotel lobbies, buses, apartments, taxis, or even in private automobiles, where their conduct has no relation to the acts of others who may be disposed to use controlled drugs. In such situations, must they either immediately leave because of fear of prosecution under the statute under consideration; or perhaps force the others to discontinue the use of the controlled substance; or perhaps have the others arrested. Must a host expel his guest if he discovers the guest is in possession of or using a controlled substance?

Could a college student be convicted under the statute if he merely continued to reside with a roommate whom he knew illegally possessed marijuana? What action would a passenger in a car take when he learns that others in the car have drugs on their persons although they are not at that time using the drugs? Must the passenger demand that he be let out of the car or that the others dispose of anything illegal in their pockets? How about the status of relatives, priests, or doctors attempting to discourage continued violations? What if a person were engaged in a constitutionally protected activity, such as attending a public meeting or voting, when he inadvertently discovers that another person at

the meeting or at the polls is in possession of a controlled substance? All the above situations would appear to be covered by the express language of the statute itself, and would result in the imposition of criminal liability upon a person merely because of his or her presence at the scene of the offense with knowledge that such illegal activity was taking place. We do not believe the Legislature intended to make such innocent conduct criminal, and yet by virtue of the overbreadth of the language used, as commonly understood, criminal liability might well result.

There are certain well-established rules for the interpretation of criminal statutes which are applicable in the present case. The general rule as to vagueness is well summarized in State v. Adams, 180 Neb. 542, 143 N. W. 2d 920 (1966), where this court stated: "It is a fundamental requirement of due process of law that a criminal statute be reasonably clear and definite. Markham v. Brainard, 178 Neb. 544, 134 N. W. 2d 84. A crime must be defined with sufficient definiteness and there must be ascertainable standards of guilt to inform those subject thereto as to what conduct will render them liable to punishment thereunder. State v. Nelson, 168 Neb. 394, 95 N. W. 2d 678. The dividing line between what is lawful and unlawful cannot be left to conjecture."

A penal statute creating an offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. Any statute which forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning, and differ as to its application, violates the first essential of due process of law. State v. Adams, *supra*, citing Connally v. General Constr. Co., 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322; State v. Nelson, 168 Neb. 394, 95 N. W. 2d 678; State v. Pocras, 166 Neb. 642, 90 N. W. 2d 263; State ex rel. English v. Ruback, 135 Neb. 335, 281 N. W. 607. Other cases stating the same rule, with minor variations, are Markham v.

Brainard, 178 Neb. 544, 134 N. W. 2d 84 (1965); Heywood v. Brainard, 181 Neb. 294, 147 N. W. 2d 772 (1967).

In State ex rel. English v. Ruback, *supra,* the court quoted from Fairmont Creamery Co. v. Minnesota, 274 U. S. 1, 10, indicating the invalidity of overbroad criminal statutes, stating: "It is not permissible to enact a law which, in effect, spreads an all-inclusive net for the feet of everybody upon the chance that, while the innocent will surely be entangled in its meshes, some wrongdoers also may be caught." See, also, State v. Pocras, *supra.*

In Markham v. Brainard, *supra,* the court ruled that a penal law which makes criminal an act which the utmost care and circumspection would not enable one to avoid is invalid. In Heywood v. Brainard, *supra,* this court declared unconstitutional a Nebraska statute making it unlawful for the operator of a motor vehicle to flee in the vehicle in an effort to avoid arrest for violating *any* law of this state and further stating that the operation of such vehicle in an *otherwise lawful manner* shall not constitute fleeing to avoid arrest. In pointing out the ambiguity inherent in that statute the court stated: "Does the statute mean that the operator fleeing to avoid arrest must have violated some traffic regulation such as speeding or running a stop sign or some similar violation previous to the pursuit? The Revisor of Statutes may have placed this interpretation on it in the catch line phrase 'operating motor vehicle in violation of law.' This may be a plausible interpretation, but the statute does not appear to be so restricted. The statute says 'for violating any law of this state.' It does not say for violating a law while operating a motor vehicle. Does the statute mean that if a law has been violated and the operator in fleeing from arrest does not violate any traffic regulation, the statute does not apply? This might raise a question as to whether it is possible to operate a vehicle in a lawful manner while fleeing to avoid arrest. There are many other questions that

might be raised as to the meaning of the statute, but these are sufficient to point up the problem."

In declaring that statute unconstitutional, the court cited the test quoted from State v. Adams, *supra*. The court concluded that the phrase: "Operation of such motor vehicle in an otherwise lawful manner shall not constitute fleeing to avoid arrest makes section 60-430.02, R. S. Supp., 1965, vague and uncertain and requires men of ordinary intelligence to speculate on its meaning."

Our court, has laid down guidelines to assist in determining whether a statute defining an offense is void for uncertainty. In State ex rel. English v. Ruback, *supra*, the rule is quoted as follows: " 'The test to determine whether a statute defining an offense is void for uncertainty (1) is whether the language may apply not only to a particular act about which there can be little or no difference of opinion, but equally to other acts about which there may be radical differences, thereby devolving on the court the exercise of arbitrary power of discriminating between the several classes of acts. (Citing case.) (2) The dividing line between what is lawful and what is unlawful cannot be left to conjecture.' " See, also, Connally v. General Construction Co., 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322; Lanzetta v. New Jersey, 306 U. S. 451, 59 S. Ct. 618, 83 L. Ed. 888.

In our opinion, the statute under consideration contains both of the above flaws, and is also vulnerable to attack on the ground that the language employed therein is so general and indefinite as to embrace not only acts commonly recognized as reprehensible, but also others which it is unreasonable to presume were intended to be made criminal. Section 28-4,127 (1)(g) offers no guidance as to how one can avoid violating the law and is not sufficiently clear so that a person of ordinary intelligence has fair notice of what exactly is forbidden conduct under the statute.

Appellant points out, however, that three jurisdictions,

Massachusetts, California, and Florida, have interpreted similar statutes to avoid the problems inherent in subsection (1)(g). They have, in effect, done this by the expedient of providing through interpretation exceptions to the application of the statute. See, for example, Commonwealth v. Tirella, 356 Mass. 271, 249 N. E. 2d 573 (1969); People v. Brim, 257 Cal. App. 2d 839, 65 Cal. Rptr. 265 (1968); People v. Cressey, 2 Cal. 3d 836, 471 P. 2d 19, 87 Cal. Rptr. 699 (1970); Jolley v. City of Jacksonville, 281 S. 2d 901 (Fla. App., 1973). Generally speaking, they have done this by interjecting these additional requirements or some combination thereof: (1) Control of the premises or automobile by the person charged; (2) aiding and abetting the illegal activity; (3) acquiescence or fellowship on the part of the accused, including the failure to leave or take other action, within a reasonable time after becoming aware of such illegal activities; and, on occasion, (4) other acts of the accused constituting violations of the Controlled Substances Act.

We point out, however, that these decisions have themselves resulted in further questions of interpretation of their respective statutes. For example, in In re Elizabeth H, 20 Cal. App. 3d 323, 97 Cal. Rptr. 565 (1971), the court decried the "legal quagmire" created by People v. Cressey, *supra,* and expressed the hope that subsequent decisions would remove some of the uncertainty from the application of the statute. In the opinion of that court, the only thing really clear at the time of that decision was that mere knowledge and presence were not sufficient to constitute a violation. The problems created by the Cressey case in California are illustrated in a law review article entitled "No Place for 'Being in a Place': The Vanishing of Health and Safety Code Section 11,556," 23 Stan. L. Rev. 1009 (1971). See, also, Commonwealth v. Flaherty, 358 Mass. 817, 266 N. E. 2d 875 (1971).

It is not the court's duty, nor is it within its province,

to read a meaning into a statute that is not warranted by the legislative language. Wessel v. City of Lincoln, 145 Neb. 357, 16 N. W. 2d 476 (1944). This is especially true in the absence of any evidence of legislative intent. In State v. Adams, *supra,* the court had before it the Nebraska statute providing that: "Any person or persons who shall operate a vehicle upon any highway in such a manner as to (1) endanger the safety of others or (2) cause immoderate wear or damage to any highway, shall be deemed guilty of a misdemeanor * * *." In holding the statute unconstitutional and void, the court stated: "As pointed out by the defendant, in a broad sense the mere operation of a motor vehicle endangers the safety of others to some extent. Although it is unlikely that the Legislature intended such a broad application, there is no language in the statute which limits it to a more specific application." We are faced with the same situation in this case. Even assuming that subsection (1)(g) was intended to accomplish a socially desirable objective, if drastic surgery is necessary to preserve it, the surgery should, in our opinion, be performed by the Legislature and not by the court.

We conclude that section 28-4,127 (1)(g), R. S. Supp., 1974, as presently constituted is vague and overbroad and in contravention of the United States and Nebraska Constitutions and we affirm the judgment of the District Court.

AFFIRMED.

SPENCER, J., dissenting.

I respectfully dissent for the reason that all the courts which have heretofore construed this particular statute have found it to be constitutional. I feel it is our duty to find a statute to be constitutional, if, by a proper construction we can reasonably do so. California, Florida, and Massachusetts have done so with this specific statute.

As the United States Supreme Court said in Rose v. Locke (1975), 423 U. S. 48, 96 S. Ct. 243, 46 L. Ed. 2d

185: (The) "prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for 'in most English words and phrases there lurk uncertainties.' "

In United States v. Powell (Dec. 2, 1975), 423 U. S. 87, 96 S. Ct. 316, 46 L. Ed. 2d 228, the Supreme Court of the United States held: "That Congress might have chosen 'clearer and more precise language' equally capable of achieving its objective does not mean that the statute is unconstitutionally vague." Further, "While doubts as to the applicability of the language in marginal fact situations may be conceived, we think that the statute gave respondent adequate warning * * *. Even as to more doubtful cases than that of respondent, we have said that 'the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree.' "

CLINTON, J., responding to the dissent of SPENCER, J.

The dissent of Spencer, J., calls for a brief response on two points. First, the primary constitutional deficiency of the provision of the statute in question is that it is overbroad, not that it is vague. The majority opinion amply demonstrates this overbreadth. Second, the Massachusetts, California, and Florida cases upon which the dissent relies completely disregard proper judicial functions and simply rewrite the statute. If we are to do that then we violate the principle of separation of powers of our own Constitution by a completely unwarranted intrusion into the legislative domain. We have said many times in somewhat varying language that: "A court cannot, under the guise of its powers of construction, rewrite a statute, supply omissions, or make other changes . . . ." Bessey v. Board of Educational Lands & Funds, 185 Neb. 801, 178 N. W. 2d 794.

It is far more important that we adhere to our own

salutary principles of statutory construction, which are a recognition of the fundamental constitutional doctrine of separation of powers, than that we defend the police power of the state by arbitrarily restricting the operation of the general words of our present statute.

We cannot remedy the overbreadth short of rewriting the statute. If we can do that in this case, we can do it in any other. That is beyond our constitutional power as a court.