STATE OF NEBRASKA, APPELLEE, v. WILLIAM SHIFFBAUER, APPELLANT.

251 N. W. 2d 359

Filed March 9, 1977. No. 40740.

Ronald J. Palagi of Shrout, Christian, Krieger, Nestle & Palagi, for appellant.

Paul L. Douglas, Attorney General, and Judy K. Hoffman, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.
Defendant, William Shiffbauer, was found guilty by

a jury of knowingly or intentionally delivering a substance which he represented to be a controlled substance but which was not in fact such a substance. He was sentenced to 1 year probation and 60 days imprisonment in the Douglas County jail was imposed as one of the conditions of probation. Defendant appealed, alleging four assignments of error: (1) Section 28-4,125(7), R. R. S. 1943, under which he was charged, is violative of fundamental principles of due process; (2) the evidence is insufficient to sustain the verdict; (3) the trial court refused to instruct the jury as to a lesser offense; and (4) the trial court erred in making a 60-day period of imprisonment a condition of probation. We affirm.

On the night of June 16, 1975, an undercover agent established contact with the defendant in Omaha. The undercover agent told the defendant he wanted to buy some amphetamines. The defendant offered to sell the agent 100 tablets of dexedrine for $25. Dexedrine is a controlled substance under the Uniform Controlled Substances Act. The agent gave the defendant $25 and received a plastic bag full of white pills similar to aspirin tablets in return. The substance was analyzed by a research chemist. The tablets were caffeine, not dexedrine. Caffeine is not a controlled substance. The defendant was charged with knowingly or intentionally delivering a substance which he represented to be a controlled substance but which, in fact, was not such a substance, in violation of section 28-4,125(7), R. R. S. 1943.

The defendant on this appeal challenges the constitutionality of section 28-4,125(7), R. R. S. 1943. That subsection is a part of the Uniform Controlled Substances Act and provides: "(7) It shall be unlawful for any person to knowingly or intentionally deliver, distribute, or dispense a substance that such person expressly or implicitly represents to be a controlled substance but which is not in fact such a substance. Any

person violating the provisions of this subsection shall be guilty of a felony and shall, upon conviction thereof, be punished by a fine of not more than two thousand dollars, or by imprisonment in the Nebraska Penal and Correctional Complex for not less than one year nor more than five years, or by both such fine and imprisonment."

The Nebraska Uniform Controlled Substances Act was adopted in 1971. It was modeled after the Federal Comprehensive Drug Abuse, Prevention, and Control Act of 1970, and the Uniform Controlled Substances Act which are essentially identical. In 1974, subsection (7), the subsection involved here, was added to section 28-4,125, R. R. S. 1943. There is no similar provision in the federal law nor in the Uniform Act. The legislative history demonstrates an intent to restrict the illegal traffic in controlled substances by making it criminal to sell any substance represented to be a controlled substance which is not.

This court stated in State v. Adkins, 196 Neb. 76, 241 N. W. 2d 655 (1976): "A penal statute creating an offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. Any statute which forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning, and differ as to its application, violates the first essential of due process of law." But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. All the Due Process Clause requires is that the law give sufficient warning that men may conform their conduct so as to avoid that which is forbidden. Rose v. Locke, 423 U. S. 48, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975).

It is obvious the Legislature intended to make it unlawful to deliver a substance represented to be a controlled substance. "In determining the sufficiency of

the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." Parker v. Levy, 417 U. S. 733, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974). See, also, State v. Guy, 196 Neb. 308, 242 N. W. 2d 864 (1976), wherein it was stated: "Since this ordinance does not involve First Amendment rights, the challenge thereon on the ground of vagueness must be examined in the light of the facts at hand." The facts show defendant represented he was selling dexedrine, a controlled substance. This is clearly the type of activity made illegal by the statute.

The essential elements of the offense are: (1) That the defendant knowingly or intentionally deliver, distribute, or dispense a substance; (2) that the defendant expressly or implicitly represent the substance to be a controlled substance; and (3) that the substance is not, in fact, a controlled substance.

It is not necessary to decide whether "implicitly represents" is vague. It is undisputed that defendant made an express representation that he was selling a controlled substance. "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." Parker v. Levy, 417 U. S. 733, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974).

Defendant also lacks standing to challenge the statute on the ground of overbreadth. The fact that some innocent conduct, such as the dispensing of an uncontrolled substance by a physician or pharmacist, may come within the terms of the statute does not affect defendant. "Embedded in the traditional rules governing constitutional adjudication is that a person to whom a statute may be constitutionally applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in situations not before the court. Broadrick v. Oklahoma (1973), 413 U. S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830." State v. Brown, 191 Neb. 61, 213 N. W. 2d 712 (1974).

Defendant's second assignment attacks the sufficiency of the evidence. Apparently the basis of his argument is that the statute under which he was convicted requires him to know the substance he sold was not a controlled substance. It is his contention the jury could not have reasonably inferred such knowledge and therefore he argues the evidence was insufficient to support the jury verdict. Defendant misinterprets the statute.

We doubt if the statute can be read to require that the defendant know the substance he sold was not a controlled substance if he actually represents it to be. The knowingly refers to his representation of the substance to be a controlled substance, not the fact he knows it is not. That question, however, is immaterial herein. The trial judge, over objection by the State, instructed the jury that in order to return a verdict of guilty it must find that the defendant knowingly or intentionally delivered a substance which he expressly or implicitly represented to be a controlled substance and which he knew was not a controlled substance.

There was evidence in the record that the defendant had been selling drugs for 8 years. There is direct testimony that the purchaser of the drugs was told by the defendant that the tablets were dexedrine, a controlled substance. There was testimony that the substance was actually caffeine. The defense called no witnesses to dispute any of this testimony.

Defendant's third assignment of a lesser-included offense relates to his position that he should have been charged with obtaining money under false pretenses. It is obvious that the court correctly refused the proposed instruction as the material elements of section 28-4,125(7), R. R. S. 1943, do not encompass all the elements of the crime of obtaining money under false pretenses. That offense, as described in section 28-1207, R. R. S. 1943, requires the intent to cheat or defraud. As stated in O'Bryan v. State, 111 Neb. 733, 197 N. W. 609 (1924): "Intent to cheat and defraud the persons

wronged is, however, made an ingredient of the crime and this intent necessarily includes knowledge."

It is precisely this "knowledge" or "intent to cheat and defraud" which is not a necessary element of the offense described in section 28-4,125(7), R. R. S. 1943, upon which the defendant here was convicted. Knowledge of the identity of the substance, i.e., knowledge or intent to cheat or defraud another bears no relation to the offense involved herein.

It is only where a higher crime fully embraces all the ingredients of a lesser offense, and when the evidence requires it, that an instruction on a lesser-included offense must be given on request. State v. McClarity, 180 Neb. 246, 142 N. W. 2d 152 (1966).

Defendant's fourth assignment challenges the 60-day period of confinement as a condition of probation. There is no merit to the defendant's contention. Section 29-2262, R. R. S. 1943, as amended by L.B. 289, Laws 1975, provides: "(1) When a court sentences an offender to probation it shall attach such reasonable conditions as it deems necessary or likely to insure that the offender will lead a law-abiding life.

"(2) The court, as a condition of its sentence, may require the offender: * * *

"(b) To be confined periodically in the county jail or to return to custody after specified hours, but not to exceed ninety days; * * *."

Considering the fact that defendant was on probation for an offense committed in California, the trial court was more than lenient herein.

The only question which remains is that L.B. 289 became effective 3 months after the adjournment of the 1975 Legislature, or August 24, 1975. The offense was committed on June 16, 1975. Trial was held January 7, 1976, and defendant was sentenced on February 19, 1976. Thus, L.B. 289 became effective after the offense was committed, but prior to trial and sentencing. L.B. 289 is an act relating to criminal procedures which

provide probation conditions. It is a well-established principle that whether a proceeding be criminal or civil, the procedures and procedural rules to be applied are those which are in effect at the date of the hearing or proceeding and not those in effect when the act or violation is charged to have taken place. Durousseau v. Nebraska State Racing Commission, 194 Neb. 288, 231 N. W. 2d 566 (1975).

There is no merit to any of the defendant's assignments. The judgment is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

The majority opinion tacitly concedes that subsection (7) of section 28-4,125, R. R. S. 1943, might be unconstitutional if the State attempted to enforce it in many different situations and against various classes of persons. Nevertheless, the court holds that the defendant has no standing to challenge the constitutionality of subsection (7), even though he has been convicted under it, because the court determines that the statute clearly applies to the defendant's conduct, and that such conduct could constitutionally have been made criminal. The real issue is whether subsection (7) of section 28-4,125, R. R. S. 1943, is unconstitutional, not whether some other version of the statute might have been constitutional.

Subsection (7), under its terms, clearly applies to all sorts of essentially innocent conduct as well as to what is presumptively criminal conduct. We have not previously been so concerned with procedural problems of standing in challenges to the constitutionality of other provisions of the Uniform Controlled Substances Act. In State v. Adkins, 196 Neb. 76, 241 N. W. 2d 655, the defendants moved for a dismissal of charges prior to trial on the ground that the statute was unconstitutionally vague and overbroad on its face in contravention of the Due Process and Equal Protection Clauses of the Constitution. In that case we held the subsection

under consideration unconstitutionally vague and overbroad without any evidence of the particular conduct the defendants had engaged in. We said there: "The test to determine whether a statute defining an offense is void for uncertainty (1) is whether the language may apply not only to a particular act about which there can be little or no difference of opinion, but equally to other acts about which there may be radical differences, thereby devolving on the court the exercise of arbitrary power of discriminating between the several classes of acts, and (2) the dividing line between what is lawful and what is unlawful cannot be left to conjecture." We also determined in Adkins that the subsection there involved was so "indefinite as to embrace not only acts commonly recognized as reprehensible but also others which it is unreasonable to presume were intended to be made criminal." In that regard we said: "It is not permissible to enact a law which, in effect, spreads an all-inclusive net for the feet of everybody upon the chance that, while the innocent will surely be entangled in its meshes, some wrongdoers also may be caught."

Subsection (7) of section 28-4,125, R. R. S. 1943, by its specific terms applies to all sorts of essentially innocent conduct in even more obvious fashion than the subsection involved in Adkins. The court, however, now ignores the basic constitutional issues and resorts to procedural issues of "standing." The majority opinion might even be taken to approve the constitutionality of subsection (7). It should be pointed out here that the constitutional validity of an act of the Legislature is to be tested and determined not by what has been or possibly may be done under it, but by what the law authorized to be done under and by virtue of its provisions. See Bachus v. Swanson, 179 Neb. 1, 136 N. W. 2d 189.

Subsections (1) and (3) of section 28-4,125, R. R. S. 1943, which make it a crime to manufacture, dis-

tribute, deliver, dispense, or possess a controlled substance or a counterfeit controlled substance, each contain specific exemptions for conduct otherwise authorized by the Uniform Controlled Substances Act. Subsection (7) does not contain any such exceptions. The subsection simply makes it unlawful to knowingly or intentionally "deliver, distribute, or dispense" an *uncontrolled* substance which has been represented to be a·controlled substance. The quoted words are specifically defined in section 28-4,115, R. R. S. 1943. "Dispense" is defined to mean only a delivery pursuant to a lawful order or prescription of a licensed physician, and "dispenser" includes only a licensed pharmacist or other practitioner. "Distribute" is defined to mean to deliver other than by administering or dispensing, and "deliver" or "delivery" means the actual, constructive, or attempted transfer from one person to another.

The Uniform Controlled Substances Act applies only to controlled substances. The act specifically does not apply to any non-narcotic substance which may be lawfully sold over the counter without a prescription. Subsection (7) of section 28-4,125, R. R. S. 1943, is therefore the only portion of the act which pertains to *uncontrolled* substances, and the first sentence of that subsection contains the complete specification of all the elements of the crime. "It shall be unlawful for any person to knowingly or intentionally deliver, distribute, or dispense a substance that such person expressly or implicitly represents to be a controlled substance but which is not in fact such a substance." There are obviously no exemptions or exceptions in the subsection. It can be argued that the Legislature intended to include the same exceptions set out in other parts of the act under which possession, handling, and selling of controlled substances is authorized and lawful. These exceptions revolve around prescribing and handling by licensed physicians, pharmacists, and practitioners. Any conclusion that the Legislature inadvert-

ently omitted the exceptions is destroyed, however, because the word "dispense" is used in subsection (7) without any qualification whatever. "Dispense," by specific definition in the act, means only a delivery pursuant to a lawful order or prescription of a licensed physician, and "dispenser" includes only a licensed pharmacist or other practitioner. The subsection therefore sweeps with a broad broom, and goes far beyond illegal sales or offers to sell and deliver made in the course of the illegal traffic in controlled substances.

Except for subsection (7), the acts which that subsection prohibits and makes criminal were otherwise not unlawful. In Nebraska there is no statute which makes it a crime to *offer* to sell a controlled substance. Neither is there any criminal statute which forbids representing an uncontrolled substance to be a controlled substance.

Subsection (7) does not require that an accused know that the substance delivered is not a controlled substance. The majority opinion interprets the subsection that way. The State vigorously supports that interpretation and asserts in its brief: "Thus a simple reading of the language of Section 28-4,125 (7), indicates that the accused need not know that the substance is not controlled, as long as he intentionally or knowingly delivered, dispensed or distributed the substance which he expressly or implicitly represented to be a controlled substance." It is argued by the defendant that a mistaken or erroneous belief as to the nature of the substance delivered is a defense. The State contends that the prohibited delivery or dispensing furnishes the only criminal intent required by the statute.

The issue of whether or not an accused must know that the substance delivered is not, in fact, a controlled substance is only a part of the broader issue of whether or not subsection (7) is clear and definite. A far greater problem on the issue of indefiniteness arises in attempting to determine the meaning of "implicitly

represents." In contrast with the word "expressly," it is uncertain what statements or conduct can be said to implicitly represent a substance to be a controlled substance. The dictionary meaning of the word "implicit" is: tangled or twisted together, tacitly involved in something else, capable of being understood from something else though unexpressed, capable of being inferred. The term could include conduct alone. It could also include ambiguous or otherwise inaccurate or erroneous statements. A mistaken statement that a substance is obtainable only on prescription might well be said to "implicitly represent" it as a controlled substance, even though the statement is erroneous and made innocently. At the least, subsection (7) fails to fairly define what specific conduct is criminal, and fails to provide ascertainable standards of law enforcement which are free from arbitrary and discriminatory action. The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon one conception of its requirements and the courts upon another. A crime must be defined with sufficient definiteness and there must be ascertainable standards of guilt sufficient to inform those subject thereto as to what conduct will render them liable to punishment thereunder. State v. Nelson, 168 Neb. 394, 95 N. W. 2d 678.

Subsection (7) as drawn goes far beyond the illegal traffic in controlled substances and the sale of substituted substances. It sweeps within its prohibition all sorts of actions not normally considered to be criminally culpable. As it stands, the subsection makes it a crime for a physician to prescribe or administer a pla-

cebo which he represents to be a controlled substance, or for a pharmacist to accidently or negligently dispense an uncontrolled substance represented to be a controlled substance. The subsection even makes it a crime for a person to give aspirin to a friend mistakenly representing and believing it to be a controlled substance issued only under a prescription. Clearly there is no reasonable relationship between the conduct prohibited and the public purpose to be achieved.

A legislative decision to restrict certain activity must be grounded on a rational basis. The extent to which the Legislature may exercise the police power, an attribute of state sovereignty, is primarily a matter of legislative judgment, but the purpose of the regulatory matter must be legitimate and the means employed to effect it must be reasonable. Bridgeford v. U-Haul Co., 195 Neb. 308, 238 N. W. 2d 443.

Even if the specific intent of the Legislature in adopting subsection (7) of section 28-4,125, R. R. S. 1943, were clearly ascertainable, this court could not interpret the subsection by limiting its application without completely rewriting it. As we said in State v. Adkins, 196 Neb. 76, 241 N. W. 2d 655: "(I)f drastic surgery is necessary to preserve it, the surgery should, in our opinion, be performed by the Legislature and not by the court."

"A court cannot, under the guise of its powers of construction, rewrite a statute, supply omissions, or make other changes * * *." Bessey v. Board of Educational Lands & Funds, 185 Neb. 801, 178 N. W. 2d 794.

Only two other states have enacted legislation in this area as an addition to the Uniform Controlled Substances Act. Each statute differs from that of Nebraska, and each is different from the other. Neither of them use the word "dispense," and both attempt to differentiate between sales or deliveries which would be lawful or unlawful if other provisions of the Uniform Controlled Substances Act were applicable. Apparently

the constitutionality of the statutes has not yet been determined. See, Cal. Health & Safety Code, § 11355 (West, 1975); Ill. Ann. Stat., Ch. 56½, § 1404 (Smith-Hurd Supp., 1977).

Subsection (7) of section 28-4,125, R. R. S. 1943, is unconstitutionally indefinite and overbroad. It should not be glossed over by tacit approval. The attention of the Legislature ought to be specifically directed to the subsection to permit the Legislature to enact proper and constitutional legislation directed at the specific conduct which the Legislature desires to prohibit.

BRODKEY, J., joins in this dissent.

BOSLAUGH, J., dissenting in part.

I concur generally in the decision of the court that the judgment should be affirmed. I disagree with that part of the opinion which holds that knowledge on the part of the defendant, that the substance he sold was not the substance he represented it to be, is not an element of the offense. The better rule is that a prescribed culpability requirement should apply to all material elements of the offense. See Model Penal Code, § 2.02(4).