REQUESTED BY: Senator Jerome Warner Nebraska State Legislature Unicameral, State Capitol Lincoln, Nebraska 68509
Dear Senator Warner:
In your letter of May 26, 1981, you requested our opinion regarding the interpretation of certain language in LB 412 as amended by the committee amendments. We have reviewed that legislation, and our opinions regarding your various questions are set forth below.
LB 412 would amend various sections of the Nebraska Revised Statutes which deal with the special tax treatment of agricultural lands. Those sections, Neb.Rev.Stat. § 77-1343
to 77-1348 (Reissue 1976), basically provide that qualifying real estate used for agricultural purposes shall be assessed at its actual value for agricultural use and not at the actual value it would have if applied to other than agricultural use. To qualify for this special assessment, agricultural land must be used exclusively for an agricultural use and must be located within an agricultural use zone. The portions of LB 412 pertinent to our present discussion amend the definition of agricultural use zone to include any land designated `predominantly' for agricultural use by cities or counties under their zoning powers. They further provide that an agricultural use zone shall not include residential and nonagricultural commercial development with an overall density of more than one unit per ten acres and that the special assessment provisions available to qualifying agricultural land shall not be available to portions of an agricultural use zone which have been subdivided for residential or commercial use.
In your letter of May 26th, you first ask: `On page 2, line 14, [of LB 412] `agricultural use zone' is defined as any land `designated predominately [sic] for agricultural use.' What does the term `predominately' [sic] mean, . . .'
LB 412 does not contain a definition of `predominantly' within its definitional sections. Since the bill itself does not define the term, under the decisions of our Supreme Court, the word must be given its plain and ordinary meaning in the process of statutory construction. State v. One1970 2-Door Sedan Rambler (Gremlin), 191 Neb. 462,215 N.W.2d 849 (1974), and Bachus v. Swanson, 179 Neb. 1,136 N.W.2d 189 (1965). Webster's New World Dictionary 1121 (2nd Ed. 1976) gives two definitions for the word predominant: `1. having ascendancy, authority, or dominating influence over others; superior, 2. most frequent, noticeable, etc.; prevailing; preponderant.' The word predominantly is listed as an adverb form of the word predominant. Given this basic definition, we assume that the word predominantly in LB 412, under its ordinary and plain meaning, can be construed to mean most frequently, prevailing, or preponderantly.
You next ask `how is the county assessor to determine which land is designated `predominately [sic] for agricultural use?'' In response to this question, we note that in order for agricultural lands to receive special tax treatment under LB 412, they must be in an area designated as predominantly for agricultural use by a city or county under its zoning authority. In other words such lands must be in an agricultural use zone. Therefore, a county assessor can determine which land is designated predominantly for agricultural use be determining if that land has been included in an agricultural use zone by a city or by a county.
Once the county assessor ascertains that the land lies within such a properly constituted zone, it is not necessary under the terms of LB 412 for him or her to independently determine that the land is predominantly for agricultural use.
Your next question is `if this bill were passed, would it then be possible for land to receive the greenbelt special assessment even though the zoning would allow commercial or industrial use on that land?' Our answer to this question is yes, but only in instances where the land permitted an industrial or commercial use is being farmed or used exclusively for an agricultural use. Under LB 412, property must pass a two part test in order to qualify for the special tax treatment afforded agricultural lands. First of all, the land must be used exclusively for an agricultural use as defined in the bill. Second, the land must be within an agricultural use zone as defined in the bill. Since LB 412 defines agricultural use zone as any land designated `predominantly' for agricultural use, it is conceivably possible that a small area of land within an agricultural use zone could be permitted industrial or commercial development. However, in order to qualify for special tax treatment, that land would have to pass the second part of the test prescribed in LB 412, i.e., the land would have to be used exclusively for an agricultural use. If the land permitted an industrial or commercial use within the agricultural use zone was in fact used for industrial or commercial purposes, it would thus lose the special tax treatment set forth in LB 412. We also note that LB 412 further restricts commercial development in an agricultural use zone by providing that nonagricultural commercial development with an overall density of more than one unit per ten acres cannot be allowed in an agricultural use zone and by providing that special tax treatment is unavailable to those portions of an agricultural use zone subdivided for commercial purposes.
Your final question concerns whether the insertion of certain language into LB 412 would prevent land from receiving the special tax treatment when it was located in an agricultural use zone and when its particular zoning allowed commercial or industrial use. Under LB 412 with your proposed insertion, section 77-1344 of the Nebraska Revised Statutes would read as follows:
 (1) Any land which is used exclusively for agricultural use, and which is located within an agricultural use zone, shall be assessed at its actual value for agricultural use and not at the actual value it would have if applied to other than agricultural use if application for such special assessment is made pursuant to sections 77-1343 to 77-1348; Provided, that the special assessment provisions shall not be applicable to that portion of lands zoned for agricultural use or zoned to allow commercial or industrial use if such lands have been subdivided for residential or commercial use.
In our opinion, in instances where land lies within the agricultural use zone and is actively farmed, the language above would prevent lands zoned for commercial or industrial use from receiving the special tax treatment outlined in LB 412 only in instances where those lands were subdivided for residential or commercial uses. Lands permitted a commercial or industrial use within an agricultural use zone would still be eligible for the special tax treatment if they had not been subdivided for residential or commercial use and if they were being used exclusively for farming.
Sincerely, PAUL L. DOUGLAS Attorney General Dale A. Comer Assistant Attorney General